208 N.J. Super. 9 (1985)
504 A.2d 1184
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
HENRY ALLISON, DEFENDANT-APPELLANT.
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ABRAHAM MICKENS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted May 28, 1985.
Decided August 30, 1985.
*12 Before Judges McELROY and SHEBELL.
*13 Thomas S. Smith, Acting Public Defender, attorney for appellants (Lowell Espey, designated counsel, of counsel and on the brief).
Irwin I. Kimmelman, Attorney General, attorney for respondent (Mildred Vallerini Spiller, Deputy Attorney General, of counsel and on the brief).
PER CURIAM.
Defendants were the subjects of a joint indictment. The indictment charged both defendants with conspiracy to commit aggravated arson and first degree arson in violation of N.J.S.A. 2C:17-1a and N.J.S.A. 2C:17-1d. (Count one). Defendant Mickens was also charged with first degree arson, in violation of N.J.S.A. 2C:17-1d (Count two), and theft by deception, in violation of N.J.S.A. 2C:20-4 (Count seven). Defendant Allison was charged with first degree arson, in violation of N.J.S.A. 2C:17-1d (Count three), aggravated arson, in violation of N.J.S.A. 2C:17-1a (Counts four, five, six and eight), burglary, in violation of N.J.S.A. 2C:18-2 (Counts nine and eleven) and theft, in violation of N.J.S.A. 2C:20-3a (Counts ten and twelve). Counts eight through twelve were severed prior to trial because they pertained to incidents unrelated to Mickens.
On February 17, 19, 22, 23, 24, 25 and 26, 1982, defendants were jointly tried by a jury. On February 26, 1982, the jury returned guilty verdicts against both defendants on all counts.
On March 29, 1982, both defendants appeared before the trial judge for sentencing. Mickens was sentenced to a seven year custodial term on Count one, a fifteen year custodial term with a five year parole disqualifier on Count two and a three year custodial term on Count seven. All sentences were ordered to be served concurrently. Mickens was also ordered to pay an aggregate amount of $400 to the Violent Crimes Compensation Board. Allison was sentenced to a seven year custodial term on Count one and to a concurrent fifteen year custodial term on Count three. Counts four, five and six were vacated because *14 the judge ruled they merged into Count three. Allison's custodial sentence was conditioned upon his receiving proper medical treatment for cancer. Allison was also ordered to pay an aggregate amount of $75 to the VCCB. Both defendants were released on bail pending appeal.
In this consolidated appeal, defendants have filed a joint brief and both contend: (1) the verdicts are against the weight of the evidence (We note that Allison made no motion for a new trial as required by R. 2:10-1); (2) that the court erred in excluding proffered evidence of narcotics paraphernalia observed in the building, and (3) that their conspiracy convictions must be vacated because under N.J.S.A. 2C:1-8 those convictions merge into their convictions for the substantive offenses. (This point is conceded by the State). Additionally, in a point not raised below, Allison argues that the court erred in failing to instruct the jury that Mickens' out-of-court taped statements were not admissible against Allison. Mickens contends his sentence of 15 years with a 5 year parole disqualifier is manifestly excessive.
The State cross-appealed contending the trial judge erred in merging Allison's aggravated arson conviction with his first degree arson conviction.
We see no purpose to be served by a general recitation of the evidence produced at trial. We will address the facts as we deem that process necessary to our discussion of the points raised by defendants.

I
Our review of the record impels us to the firm conclusion that defendants' assertion that the jury verdict was against the weight of the evidence is clearly without merit. R. 2:11-3(e)(2). Allison's failure to move for a new trial obviates any right to raise this issue, R. 2:10-1, but in any event, the verdicts reached as to both defendants are sustainable and, clearly, there was here no "miscarriage of justice under the *15 law" apparent in the trial judge's ruling on Mickens' motion for a new trial. R. 2:10-1.

II
During the testimony of defense witness, Newark Detective Douglas Williams, Mickens' counsel made a proffer of proof that Williams would testify that sometime in July 1980, apparently while "moonlighting" as a carpenter at the building owned by Mickens, another Newark police officer, Williams observed "flammable" drug paraphernalia on the roof of the building which sustained its first fire on September 15, 1980, some two months later. That fire was the first of three Allison allegedly had set in order to fulfill his agreement with Mickens to "torch" the building so Mickens could collect insurance. All three fires occurred within eight days. The first fire occurred at about 4:15 a.m. on September 15 and had its point of origin in a third floor stairway leading to the roof. The second fire occurred on September 18 and originated in a vacant first floor apartment. The third fire, which finally destroyed the building, happened on September 23 and had its origin at two separate points in two different rooms of a first floor apartment. A fire department arson expert described all three fires as having the appearance of "incendiary" fires.
Defendants contended that Williams' evidence was relevant to their theory that drug addicts habitually used the building and probably started the fires for which both defendants stood accused. The judge viewed this proffered evidence as too remote in time and too far removed in space from the place where the first fire originated. Defense counsel argued that Williams' observation should be admitted because counsel might "through all of the witnesses ... show the continuous activity having to do with the premises." The judge stated that if counsel could "show... a pattern" he would consider the admission of Williams' testimony and inquired whether counsel intended to show such a pattern. He also asked whether *16 counsel would demonstrate "drug paraphernalia in and about the premises" at approximately the time that the fires occurred. Counsel merely indicated that "it may develop into that." (Emphasis ours.). The judge then offered to "hear your other witnesses" and implicitly ruled Williams' testimony was not admissible without such a foundation.
Defendants produced no witnesses to establish that drug paraphernalia, "flammable" or otherwise, was observed in the building at any other time. Defendants did produce seven tenants of the building. One of these, Ms. Montgomery, stated that in August and September 1980 she observed people every day who did not "belong" in the building. Sharon Armstead testified that in the summer of 1980 she observed individuals in the building who did not "belong" there, some may have been "visitors," and some "drifters" had been in the third floor area. None of the other five tenants was asked to speak to the issue of whether unauthorized people frequented the premises and no tenant described any drug related incidents or paraphernalia. No attempt was made by defendants to call Williams after Montgomery and Armstead testified.
We observe that the attempt to assert that these three fires were set by drug addicts appeared to be one which was not denied by defendants and it was, at best, an enterprise more hopeful in nature than factual in foundation. The judge merely asked for some foundation for Williams' single and rather remote observation, but defendants apparently sought no further aid from Williams' testimony after the attempt at laying a foundation was less than they hoped to produce. Thus, the judge's temporary and discretionary ruling was never put to a test. We see no basis here for remand and a new trial. The argument made by defendants on appeal is that Williams' proffered testimony was admissible because it was "relevant" under Evid.R. 1(2) and had "some probative weight" as to a cause for the fires.
*17 Relevancy is composed of two parts: materiality and probative value. McCormick on Evidence, § 185 at 541 (3rd ed. 1984). "Materiality looks to the relation between the propositions for which the evidence is offered and the issues in the case." Ibid. "Probative value" is "the tendency of evidence to establish the proposition that it is offered to prove." Ibid. Direct evidence "offered to help establish a provable fact can never be irrelevant" but circumstantial evidence may be "so unrevealing as to be irrelevant." Id. at 543-544. "[T]o say that evidence is irrelevant in the sense that it lacks probative value is to say that knowing the circumstantial evidence does not justify any reasonable inference as to the fact in question." Id. at 544. A determination of relevancy lies in "the judge's own experience, his general knowledge, and his understanding of human conduct and motivation." Ibid.
It is apparent that the proffered testimony was material to the central issue of the case in that it was directed to the cause of the fire. It is, however, a closer question as to whether the proffered testimony satisfies the "probative value" test and "renders the desired inference (that drug addicts started the fire) more probable than it would be without the evidence." Comment, Evid.R. 1(2). The court was of the view that evidence of drug paraphernalia on the building's roof in July 1980 was not probative evidence in regard to the cause of the first September fire. Although the relevancy test is broad, this conclusion is, in these circumstances, sustainable. The presence of drug paraphernalia at a location other than that where the fire originated two months prior to the fire does not provide probative evidence of the fire's cause. The court, probably in light of the proposition that relevant evidence need not independently prove a material fact, properly indicated that the most persuasive argument for relevancy would be that the July incident was part of a pattern of events. The court, in effect, held the testimony inadmissible until such evidence of a pattern was disclosed. Appellant's inability to disclose a pattern points toward the correctness of the court's decision.
*18 Even if it is concluded that the proffered testimony was relevant, it would appear that the failure to admit the testimony only amounts to harmless error. An appellate court must consider "whether in all the circumstances there was a reasonable doubt as to whether the error denied a fair trial and a fair decision on the merits." State v. Macon, 57 N.J. 325, 338 (1971). In this case, the evidence of the guilt of both defendants is of a compelling nature.

III
Allison complains of the trial judge's failure to instruct the jury that taped conversations between Mickens and Albert Glover, a State's witness who agreed to wear recording equipment when conversing with Mickens about the arson scheme, were only admissible against Mickens. Evid.R. 63(9). No objection was made at trial to this evidence nor did Allison request an Evid.R. 6 limiting charge. The issue is raised as a plain error point. R. 2:10-2. In order for Allison to succeed under that rule, the error must be of such proportion "as to have been clearly capable of producing an unjust result." Ibid.
The State argues that the taped statements of Mickens were admissible as to Allison because they were made during the course of an in furtherance of the conspiracy to burn Mickens' building. See Evid.R. 63(9)(b). This argument is frivolous. The recorded statements were made almost eleven months after the asserted conspiracy was terminated and the building was burned; the statements were inadmissible against Allison. State v. Costa, 11 N.J. 239, 248 (1953); State v. Sudol, 43 N.J. Super. 481, 489 (App.Div. 1957), certif. den. 25 N.J. 132 (1957), cert. den. 355 U.S. 964, 78 S.Ct. 555, 2 L.Ed.2d 539 (1958). A charge limiting the effect of this evidence should have been given in accordance with Evid.R. 6.
The failure to do so is not per se plain error where no request for a limiting charge was made. State v. Lair, 62 N.J. 388, 391-392 (1973). The controlling question is not whether *19 error existed, rather the essential consideration is whether in light of the entire record the claimed error may be regarded as harmless and as one which in the totality of the evidence was not the clear cause of an unjust result. R. 2:10-2. Such an inquiry is not to be resolved by weighing the effect of the error upon the jury's mind in terms of bare possibility. The applicable standard is that "not `any' possibility can be enough for a rerun of the trial. The possibility must be real, one sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." State v. Macon, 57 N.J. 325, 336 (1971). See also State v. Winter, 96 N.J. 640, 647-648 (1984) where this standard was reaffirmed.
Applying this test, we see no basis for a new trial here. There was ample evidence, independent of the taped conversation with Mickens, from which the guilt of Allison clearly appears.
Glover specifically testified that he witnessed Allison accept money from Mickens for the planned arson, that he observed Mickens show Allison the building to be burned and that Allison told Glover that he would "torch" the building. Furthermore, there was evidence presented by fire investigators indicating that the building was in fact destroyed through arson. The taped conversation added to a strong case against Allison. Thus, it does not follow that the case falls without it or that this jury was led by the failure to provide a limiting charge to a point where a clearly unjust result was achieved.

IV
As we noted earlier in this opinion, both defendants were convicted of conspiracy to commit first degree arson and aggravated arson. Allison was also convicted of the substantive crimes of first degree arson and aggravated arson while Mickens was convicted of first degree arson. The sentencing judge did not merge the convictions for conspiracy with those for the substantive offenses as required by N.J.S.A. 2C:1-8a(2). Mickens *20 thus received a seven year custodial term for the conspiracy conviction to run concurrently with the 15 year sentence imposed for first degree arson and Allison received a 7 year custodial sentence on the conspiracy conviction and a 15 year custodial term on his conviction for first degree arson, both sentences to run concurrently.
The State concedes that pursuant to N.J.S.A. 2C:1-8a(2) the conspiracy convictions of both defendants should have been merged, for sentencing purposes, with convictions for the substantive offenses. Accordingly, we order that the concurrent sentences for conspiracy imposed upon both defendants be vacated.

V
Mickens asserts that his sentence on the conviction for first degree arson, a term of 15 years with parole ineligibility for five years, is manifestly excessive and an abuse of judicial discretion. His counsel contends this is so because the judge gave no specific reason for the parole disqualifier, i.e., the judge failed to demonstrate that he was "clearly convinced that the aggravating factors substantially outweigh the mitigating factors" as required by N.J.S.A. 2C:43-6b. He also contends the court, "without referring to the statutory criteria, limited its reasoning to the gravity of the offense and the fact that Mickens was a police officer" and failed to consider Mickens' unblemished prior record and the unlikelihood that Mickens would commit another crime. N.J.S.A. 2C:44-1b(7), (8) and (9). He urges that we vacate the period of parole ineligibility or remand for resentencing and "a statement of reasons."
We are convinced that these arguments are clearly without merit. R. 2:11-3(e)(2). Although the judge did not delineate each of the statutory mitigating and aggravating factors set forth in N.J.S.A. 2C:44-1a and b, the substance of his recitation *21 of reasons for the sentence imposed and those in his R. 3:21-4(e) statement which accompanied the judgment of conviction demonstrate a weighing of those standards as they were applicable to "the Legislature's intention to focus on the degree of crime itself as opposed to other factors personal to the defendant." State v. Hodge, 95 N.J. 369, 377 (1984). See State v. Roth, 95 N.J. 334, 367 (1984). The judge, who was quite aware that defendant as a police officer had no criminal record, properly directed his attention to the fact that the crime endangered, and only fortuitously failed to take, human life, that Mickens was a public officer sworn to uphold and enforce the law and breached that public trust for personal monetary gain by hiring Allison to commit arson and that such conduct must be deterred. These aggravating factors correspond to those of N.J.S.A. 2C:44-1a(1) (nature and circumstances of the offense and the role of the actor therein), N.J.S.A. 2C:44-1a(7) (the offense was committed pursuant to an agreement that he pay for its commission) and N.J.S.A. 2C:44-1a(9) (the need for deterring defendants and others). The combination of these factors clearly outweighed defendant's lack of a prior record and the inherent hope that having been tried and convicted he would thereafter refrain from similar or other criminal activity. N.J.S.A. 2C:44-1b(7), (8) and (9). The sentence here imposed was accompanied by sufficient reasons within the statutory guidelines although not specifically articulated as to those guides. We conclude it passes muster under Roth and Hodge and does not constitute such a clear error of judgment that it shocks the judicial conscience. Roth, 95 N.J. at 364; State v. Whitaker, 79 N.J. 503, 512 (1979).

VI
Allison was convicted of three counts of aggravated arson and one count of first degree arson. The trial judge, over the State's objection, merged the three aggravated arson convictions *22 into the conviction for first degree arson on the theory that all the convictions arose out of the same transaction.
The State contends that aggravated arson and first degree arson "are factually, and by legislative intent, separate and distinct crimes." N.J.S.A. 2C:17-1 (aggravated arson) provides:
a. Aggravated arson. A person is guilty of aggravated arson, a crime of the second degree, if he starts a fire or causes an explosion, whether on his own property or another's:
(1) Thereby purposely or knowingly placing another person in danger of death or bodily injury; or
(2) With the purpose of destroying a building or structure of another; or
(3) With the purpose of collecting insurance for the destruction or damage to such property under circumstances which recklessly place any other person in danger of death or bodily injury.
N.J.S.A. 2C:17-1d (first degree arson) provides:
d. Any person who, directly or indirectly pays or accepts any form of consideration including, but not limited to, money or any other pecuniary benefit, for the purposes of starting a fire or causing an explosion in violation of this section commits a crime of the first degree.
Each party asserts that the merger issue may be resolved by reference to several New Jersey Supreme Court opinions setting forth the factors to be considered in determining whether two offenses are the same for purposes of merger. See State v. Truglia, 97 N.J. 513, 518-522 (1984); State v. Mirault, 92 N.J. 492, 501-506 (1983); State v. Best, 70 N.J. 56 (1976); State v. Valentine, 69 N.J. 205 (1976); State v. Jester, 68 N.J. 87 (1975); State v. Davis, 68 N.J. 69 (1975); State v. Ruiz, 68 N.J. 54 (1975). It has been noted that "[t]he problem of merger often arises when an accused participates in a single, continuous criminal episode and then is prosecuted for several crimes each of which represents a different stage of the episode." Best, 70 N.J. at 61. The above cited opinions rest upon the premise that if "an accused has committed only one offense, he cannot be punished as if for two." Davis, 68 N.J. at 77. Furthermore, they advocate use of a "two-pronged test for merger cases: first, it must be ascertained whether the legislature has *23 in fact undertaken to create separate offenses; and, if so, it must then be determined whether those separate offenses have been established under the proofs." Valentine, 69 N.J. at 209. With respect to the test's first prong, the Davis court, after noting that it was rejecting mechanical tests for "sameness,"[1] explained:
[w]e must first determine whether the legislature has in fact undertaken to create separate offenses
* * * * * * * *
We approach this examination with an awareness that while a court need not automatically accept the legislative enactment as controlling on the question of whether or not separate offenses have been delineated, the legislature may, nevertheless, within its constitutional authority, devise reasonable means to combat a social evil such as illegal trafficking in drugs and may endeavor to deter the recurrence of the proscribed conduct. Specifically, there is no question but that the legislature is empowered to split a single, continuous transaction into stages, elevate each stage to a consummated crime, and punish each stage separately. [68 N.J. at 78].
The Court in Davis also issued the following caveat:
Of course, determination of the statute's purposes as revealed in the legislative history does not end the examination of what is the `same offense.' Were the legislature, in attempting to create separate crimes, to do no more than simply apply different labels to what is in fact the same charge, it would plainly exceed its authority. [Id. at 80].
With respect to the test's second prong, the Davis court explained:
As a practical matter, however, it may be helpful to employ a certain flexibility of approach to the inquiry of whether separate offenses have been established under the proofs, attended by considerations of `fairness and fulfillment of reasonable expectations in the light of constitutional and common law goals.' State v. Currie, 41 N.J. 531, 539 (1964). Such an approach would entail analysis of the evidence in terms of, among other things, the time and *24 place of each purported violation; whether the proof submitted as to one count of the indictment would be a necessary ingredient to a conviction under another count; whether one act was an integral part of a larger scheme or episode; the intent of the accused; and the consequences of the criminal standards transgressed. Certainly there are other factors to be considered and, along with the above, accorded greater or lesser weight depending on the circumstances of the particular case. We mean to emphasize that by referring to these elements we do not intend either to create exclusive categories of evidence which may be of critical significance or to shroud the analytical process in any mystery. In reality we are simply reflecting, in the context of these cases, on the traditional determination of sufficiency of proofs. [68 N.J. at 81-82]. See Valentine, 69 N.J. at 210-211.
The above cited test prompted the court to reject merger of the offense of possession of narcotics with intent to distribute and distribution of narcotics, see Davis, Ruiz, Jester and Valentine; the offense of possession of narcotics with intent to distribute with aiding and abetting the distribution, see Valentine, and the offense of aggravated assault with possession of a handgun with the purpose of using it unlawfully, see Truglia. The court has merged a conviction for aggravated assault with a robbery conviction, see Mirault, and a conviction for possessing a dangerous knife with a conviction for armed robbery, see Best.
The foregoing authorities demonstrate the error here of the sentencing judge. His decision to merge Allison's aggravated arson convictions with his conviction for first degree arson inadvertently failed to properly consider the applicable merger test. Convictions do not merge simply because they arose from the same transaction. The Davis test, where the analysis focuses "on the episodic fragments of the events," Truglia, 97 N.J. at 521, should be used to address the merger question raised on this appeal.
It seems apparent that here the first prong of the Davis test, whether the Legislature has created separate offenses, has been satisfied. N.J.S.A. 2C:17-1a makes it a crime *25 to start a fire with the purpose of placing another in danger of death or bodily injury, destroying a building or collecting insurance. N.J.S.A. 2C:17-1d, on the other hand, makes it a crime to pay or accept payment for the purpose of starting a fire. The State here correctly argues that under N.J.S.A. 2C:17-1a, aggravated arson, the State is required to show that a person started a fire on his property purposely or knowingly placing another person in danger of death or bodily injury or with the purpose of collecting insurance for the destruction or damage to such property under circumstances which recklessly place any other person in danger of death or bodily injury. Under N.J.S.A. 2C:17-1d, first degree arson, the State must prove that a person, directly or indirectly, paid or accepted any form of consideration including, but not limited to, money or any other pecuniary benefit, for the purpose of starting a fire. A person may be convicted of first degree arson even if he does not actually start a fire. The only element common to both offenses is that the actor must have acted purposely. The proscription of N.J.S.A. 2C:17-1a is against starting a fire. In N.J.S.A. 2C:17-1d, the prohibition is against paying someone or accepting payment for the purpose of starting a fire. We deem it clear that the Legislature intended to punish separately the act of starting a fire as well as the act of paying someone or accepting payment for the purpose of starting a fire. The two crimes are distinct because the evidence supporting one is not sufficient to sustain a conviction on the other. The fact that a person commits aggravated arson will certainly not support a conviction for first degree arson without a showing that the defendant accepted payment. On the other hand, the fact that a person has accepted payment does not mean that he has, in fact, started a fire and is therefore guilty of aggravated arson. Thus, the jury must make different determinations under each statute which are not required to be made under the other, and which serves to sufficiently distinguish the offenses so as to make merger unwarranted. N.J.S.A. 2C:1-8a(1) and 2C:1-8d(1).
*26 In this case, the second prong of the Davis test, i.e., whether the proofs demonstrate that separate offenses were established, is also satisfied. A critical fact from the standpoint of merger is that the payment for the purpose of starting a fire and the actual commission of arson occurred on two distinct occasions some months apart. As a result, the proofs for each offense were not, as in Best, 70 N.J. at 66 and Mirault, 92 N.J. at 503, identical. Allison was guilty of first degree arson in the early part of the summer when he accepted payment from Mickens. Allison only became guilty of aggravated arson, however, when he set fire to the building three times in September. Although it is true that the two events are related and that the Davis test does note that where "one act was an integral part of a larger scheme or episode," 68 N.J. at 81, merger may result, it does not follow that merger must result. The offenses of accepting money with the intent to commit arson and aggravated arson are as independent as possession of narcotics with intent to distribute and distribution of narcotics. Furthermore, the Davis court lists additional factors relevant to the second prong of its test. Among the factors that support the State's position are "the time and place of each purported violation, [and] whether the proof submitted as to one count of the indictment would be a necessary ingredient to a conviction under another count." 68 N.J. at 81.
For the foregoing reasons the merger of Allison's convictions of aggravated arson with his conviction for first degree arson must be vacated.

VII
The judgment of conviction as to both defendants are affirmed. The matter is, however, remanded to vacate the concurrent sentences imposed upon both defendants for conviction of conspiracy and for resentencing of Allison as to the convictions for aggravated arson.
NOTES
[1] The Best court noted that "[i]n recent years this Court has eschewed a mechanical application of the traditional `offense-defining' criteria for `sameness,' which are contained in the all-too-narrow `same evidence,' same `transaction,' or `lesser-included offense' tests." Best, 70 N.J. at 62. See State v. Labato, 7 N.J. 137, 144 (1951) ("same evidence" test); State v. Roller, 29 N.J. 339, 345 (1959) ("same transaction" test).