JUSTICE PATTERSON,
concurring in part and dissenting in part.
I concur with the majority’s holding that evidence of prior instances in which defendant Thomas Scott’s mother, Darlene Barbella, lied to law enforcement officers to protect her son was not probative of bias, or admissible under N.J.R.E. 608 or N.J.R.E. 404(b). Ante at 482-83, 163 A.3d at 333). Accordingly, I agree with the majority that the trial court’s ruling in limine, authorizing the State to cross-examine Barbella on her prior misstatements to law enforcement, constituted error.
I part company with the majority, however, with respect to the question of harmless error. Rule 2:10-2 directs that we disregard error “unless it is of such a nature as to have been clearly capable of producing an unjust result.” That standard requires “some degree of possibility that [the error] led to an unjust result. The possibility must be real, one sufficient to raise a reasonable doubt as to whether [the error] led the jury to a verdict it otherwise might not have reached.” State v. Lazo, 209 N.J. 9, 26, 34 A.3d 1233 (2012) (first alteration in original) (quoting State v. R.B., 183 N.J. 308, 330, 873 A.2d 511 (2005)); State v. Ingram, 196 N.J. 23, 49, 951 A.2d 1000 (2008). Rule 2:10-2 thus compels us to review the entire record and carefully consider the impact of the error in the context of the evidence as a whole. See State v. Wilder, 193 N.J. 398, 415, 939 A.2d 781 (2008); State v. Kelly, 97 N.J. 178, 218, 478 A.2d 364 (1984); State v. Allison, 208 N.J.Super. 9, 18-19, 504 A.2d 1184 (App. Div.), certif. denied, 102 N.J. 370, 508 A.2d 235 (1985).
*503 In my view, the record strongly supports a finding of harmless error in this case. The trial court did not deprive defendant of the opportunity to present credible testimony explaining the presence of two decks of heroin in the left pocket of his jeans when he was stopped by a police officer. To the contrary, the trial court’s evidentiary ruling affected only one witness, Barbella. Defendant represents that he did not call Barbella to the stand due to concern that she would be impeached with evidence of her prior acts.
This case presents an unusual setting for a harmless error analysis. Here, we need not speculate as to what Barbella would have told the jury had defendant called her as a witness. Defendant represents that Barbella would have testified “to the same version of events” that was offered at trial by another defense witness, family friend Lauren Halbersberg. In my view, that “version of events”—that defendant’s mother accidentally planted heroin in her son’s jeans without his knowledge—is nothing short of preposterous. Defendant’s theory was, unsurprisingly, rejected by the jury in defendant’s trial, and would, in my view, clearly have been rejected with or without the testimony of Barbella.
Halbersberg told the jury that the heroin found in defendant’s jeans did not belong to him, but to his cousin, Jordan Scott, an individual whom she characterized as “nothing but a problem.” She testified that on November 27, 2012, she was in defendant’s home with defendant and his cousin Jordan, in a duplex apartment a floor above the home of defendant’s mother. Halbersberg stated that as she sat in a recliner, engrossed in Facebook posting, she observed Jordan sleeping nearby on a couch, making strange noises as he slept. She testified that at the time, defendant was preparing to take a shower.
Halbersberg told the jury that Barbella entered the room twice while she sat in the recliner and Jordan Scott slept on the couch. She testified that on her second visit, Barbella noticed heroin on a “magazine type table” attached to the couch. According to Hal-bersberg, Barbella was “totally livid” when she discovered the *504 heroin and asked her nephew Jordan, “what the hell is this[?]” Halbersberg did not testify that Jordan responded to that inquiry.
Halbersberg told the jury, “[bjasically, what [Barbella] did was, she took the two bags [of heroin]. There was a pair of jeans that were over, you know, the couch, folded over the couch. And she put them in the pocket.” By Halbersberg’s account, Barbella did nothing to verify whether the jeans belonged to Jordan Scott, rather than to defendant—who had evidently removed his pants in order to take a shower. Instead, according to Halbersberg, Bar-bella simply put the heroin in the jeans pocket and left the room.
Halbersberg told the jury that defendant then emerged from the shower, “[t]ook the, you know, pants, and his clothes,” and put them on in the bathroom. She testified that although she was aware that there was heroin in the pocket of the jeans that defendant had just put on, she did not mention that fact to defendant as they walked out of the house together; she attributed that omission to an undefined “commotion” at the time. Halbers-berg stated that defendant was picked up by a friend, and that she returned home later to learn, to her distress, that defendant had been arrested and charged with possession of heroin. Despite her purported concern about defendant’s arrest, Halbersberg inexplicably failed to disclose to law enforcement authorities that she had watched Barbella place heroin in the pocket of defendant’s jeans.
The narrative offered by Halbersberg—a narrative that, we are advised, Barbella would have duplicated had she testified—is simply incredible. According to the testimony, Barbella reacted to the discovery of heroin in her home not by contacting the police or disposing of the heroin, but by placing it in the pocket of a pair of jeans that she found in the room. Barbella purportedly took that step without verifying whether the jeans belonged to her nephew or her son, who had removed his clothing to take a shower, or warning anyone that drugs were present. Halbersberg testified that she similarly said nothing to defendant about what his mother had done—an astonishing omission, given Halbersberg’s admitted awareness that when defendant left the apartment to go out with a *505 friend, he was wearing those very jeans.[1] Having heard the testimony and argument supporting the theory that the heroin was accidentally planted in defendant’s jeans, not a single juror found reasonable doubt of defendant’s guilt.
The majority concludes that “[t]he trial court’s ruling ‘alter[ed] [defendant’s] trial strategy,’ precluding him from presenting—and the jury from assessing—a key witness who would have provided both new and corroborative evidence.” Ante at 485-86, 163 A.3d at 335) (second and third alterations in original) (quoting State v. P.S., 202 N.J. 232, 260, 997 A.2d 163 (2010)). The majority’s contention that the trial court’s ruling changed defendant’s trial strategy is belied by the record. As defendant confirmed before this Court, with or without Barbella, his trial strategy was the same: to contend that his mother put two decks of heroin in his pocket without his knowledge and that, consequently, he did not knowingly possess the drugs.[2] Thus, Barbella’s testimony would not have afforded defendant a trial strategy that was unavailable to him in her absence.[3] The strategy was employed—and it failed.
*506 The majority further contends that ⅞⅛61⅜61⅜8 testimony would have been corroborated and made more plausible by the testimony of defendant’s mother, Barbella. I respectfully disagree. Barbella’s appearance at trial would have enabled the State to further undermine defendant’s claim that he unwittingly carried heroin on his person because of his mother’s disastrous mistake. The prosecutor would undoubtedly have cross-examined Barbella on her inexplicable conduct following the discovery of heroin in her home: her apparent assumption that the jeans were not defendant’s notwithstanding the fact that defendant had undressed to take a shower moments before, her decision to place heroin in jeans that she believed were the property of her unconscious nephew, and her failure to tell anyone what she had done. In my view, Barbella’s testimony would have undermined an already farfetched theory, and her testimony would have done the defense more harm than good.
In short, although I concur with the majority’s determination of the evidentiary issue presented by this case, I do not consider the trial court’s evidentiary error to be “clearly capable of producing an unjust result.” R. 2:10-2. I view the trial court’s ruling to be harmless error. I therefore respectfully dissent from the majority’s judgment reversing defendant’s conviction.
Finally, I agree with the view expressed by Chief Justice Rabner in his concurring opinion that a revision to N.J.R.E. 608, authorizing limited cross-examination regarding specific conduct by a witness if that conduct is probative of the witness’ character for truthfulness, should be considered. Accordingly, I join in the Chief Justice’s concurring opinion.

 The majority suggests that Barbella would have testified that after she found the heroin and placed it in the jeans, she ordered Jordan Scott to leave her home, possibly anticipating that he would take the heroin with him. Ante at 485, 163 A.3d at 334. If so, her testimony would have diverged from that of Halbersberg, who said nothing about any demand by Barbella that Jordan Scott leave the home. Instead, Halbersberg testified that as she and defendant departed, Jordan was "making noises or whatever."

 The fact that Barbella's testimony would have duplicated Halbersberg’s testimony strongly suggests that the error in this case was harmless. See State v. Marshall, 148 N.J. 89, 188, 690 A.2d 1, cert. denied, 522 U.S. 850, 1 18 S.Ct. 140, 139 L.Ed.2d 88 (1997) (finding no clear error in the setting of a post-conviction relief application for precluded testimony that “would have merely duplicated other testimony, and it would have been contradicted by other evidence that the trial court found to be credible").

 This case is vastly different from the two cases on which the majority premises its harmless error holding, P.S., supra, 202 N.J. at 260, 997 A.2d 163, and Kelly, supra, 97 N.J. at 202-03, 478 A.2d 364. In P.S., supra, the Court held that the trial court's admission of a previous sexual assault allegation against the defendant was not harmless error because it precluded the defendant from *506 presenting his critical defense that the child victim had accused him of sexual assault because she had a vendetta against him. 202 N.J. at 260, 997 A.2d 163. In Kelly, supra, the trial court barred the defendant from presenting her expert on her defense of battered women’s syndrome, thus precluding her from presenting a self-defense justification to the charge that she murdered her husband. 97 N.J. at 188, 202, 478 A.2d 364. In contrast, in this case defendant had the opportunity to present his defense theory, notwithstanding the trial court's evidentiary ruling.