SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**State v. Earnst Williams (A-33-18) (081283)**

**Argued September 10, 2019 -- Decided December 11, 2019**

**TIMPONE, J., writing for the Court.**

The Court considers whether the trial court properly excluded evidence proffered by defendant Earnst Williams, who shot and killed a victim during a purported drug deal.

The victim and his friend "Craig" had previously purchased oxycodone from a supplier, "John." On this occasion, John had no supplies but referred the victim to defendant. When Craig and the victim arrived at the appointed location, the victim took $900 in cash and followed defendant into the building. Craig heard gun shots and called the police, who found the victim dead from gunshots to his abdomen and to the back of his head, with $500 on his body.

On the night of the shooting, defendant made a series of admissions to several of his cohorts: he never had any drugs to sell because his intent was to rob the victim; he carried the gun to the transaction; a scuffle ensued when he attempted to rob the victim; and he shot the victim in the leg, then in the head, took some of his money, and then ran.

The following day, Craig gave a statement to the police about the shooting and disclosed the victim's prior drug deals with John, all of which went "very smoothly."

The police arrested defendant, who then asserted that the victim pulled a gun on him and was killed when the gun went off in an ensuing struggle. In an effort to establish that the victim brought the handgun used in the homicide, defendant later moved at a pretrial hearing to cross-examine Craig about his statement to the police concerning his and the victim's prior drug transactions with John. Although Craig referenced multiple drug deals in his statement to the police, the parties focused on one particular transaction that allegedly transpired in December 2011 at a public mall.

At the hearing, defendant argued that the 2011 transaction demonstrated that the victim purchased narcotics not from physicians but on the "streets," from which one could infer that the victim knew of the risks and dangers associated with purchasing drugs on the "streets." Defendant hypothesized that because the victim was aware of those risks and dangers, the victim developed a self-protective pattern of carrying a

1

firearm with him when he purchased drugs on the "streets." Defendant argued that pattern supported his theory that the victim brought the handgun used in his own homicide when he met with defendant to purchase narcotics in July 2012. All parties agreed that neither the victim nor Craig nor John brought a handgun to the December 2011 transaction.

The trial court ultimately denied defendant's motion, relying on State v. Cofield, 127 N.J. 328 (1992), and N.J.R.E. 404(b). A jury found defendant guilty of multiple offenses. Defendant appealed his convictions and sentence, arguing that the trial court erred by: (1) not allowing defendant to cross-examine Craig about his and the victim's December 2011 drug transaction; and (2) imposing an excessive sentence.

In reversing defendant's convictions, the Appellate Division ruled that the trial court erred by not allowing defendant to introduce relevant exculpatory evidence of the victim's prior drug purchase to support his self-defense claim. The Appellate Division explained that Cofield and Rule 404(b) are inapplicable when a defendant seeks to present other-crime evidence defensively and determined that defendant's proffered evidence should have been admitted because it was relevant. The appellate court did not consider the sentencing claim.

The Court granted the State's petition for certification. 236 N.J. 235 (2018).

**HELD:** The Court agrees with the Appellate Division's determination that Rule 404(b) was inapplicable here but finds that defendant's proffered evidence failed to meet the threshold requirement of admissibility: relevancy. It was therefore not admissible.

1. When, as here, a defendant seeks to use other-crime evidence defensively -- sometimes referred to as reverse 404(b) evidence -- that defendant is free to present such evidence unconstrained by the admissibility requirements promulgated in Cofield. An accused is entitled to advance in his defense any evidence which may rationally tend to refute his guilt or buttress his innocence of the charge made. To determine whether a defendant may use other-crime evidence, courts must apply the relevance standard of Rule 401. (p. 12)

2. Evidence must be relevant for it to be admissible. To be relevant, the evidence must first have probative value -- it must have a "tendency in reason to prove or disprove" a fact. N.J.R.E. 401. Necessarily, for evidence to be relevant, it must also be material. A material fact is one which is really in issue in the case. (pp. 13-14)

3. Here, defendant sought to prove that the victim brought a handgun to the July 2012 transaction by introducing evidence about an earlier transaction to which the victim did not bring a handgun. Defendant's proffered evidence lacked probative value. Simply put, it was speculative, unproven, and ultimately irrelevant; it could not reasonably give

2

rise to the inferences the defense sought to draw. Defendant failed to establish the "logical connection" required for relevance purposes between the evidence he sought to admit and the present case, and the evidence is therefore inadmissible under Rule 401. (pp. 14-16)

4. Even if it were relevant, the evidence would be subject to exclusion under Rule 403 because it would have resulted in the needless presentation of cumulative evidence -- other evidence had been admitted that tended to support the limited point for which defendant wished to introduce the proffered evidence. (pp. 16-17)

**The judgment of the Appellate Division is REVERSED, defendant's convictions are REINSTATED, and the matter is REMANDED for consideration of defendant's sentencing claim.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUSTICE TIMPONE'S opinion.**

SUPREME COURT OF NEW JERSEY
A-33 September Term 2018
081283

State of New Jersey,

Plaintiff-Appellant,

v.

Earnst Williams, a/k/a
Ernest Williams,

Defendant-Respondent.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|--------|---------|
| September 10, 2019 | December 11, 2019 |

Frank J. Ducoat, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for appellant (Theodore N. Stephens, II, Acting Essex County Prosecutor, attorney; Lucille M. Rosano, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the briefs).

Brian P. Keenan, Assistant Deputy Public Defender, argued the cause for respondent (Joseph E. Krakora, Public Defender, attorney; Brian P. Keenan, of counsel and on the briefs).

Kayla E. Rowe, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Gurbir S. Grewal, Attorney General, attorney; Kayla E. Rowe, of counsel and on the brief).

1

In the case before us, defendant Earnst Williams shot and killed the victim at close range in the midst of a July 2012 drug transaction. At trial, defendant offered a fulsome self-defense justification. He sought to buttress that defense with evidence of the victim's prior, unrelated drug deal with another individual to establish the victim brought a handgun to the July 2012 transaction. The trial court precluded defendant from presenting such evidence. The jury ultimately convicted defendant of aggravated manslaughter and felony murder.

Defendant appealed the trial court's evidentiary ruling and his sentence. The Appellate Division reversed, finding the trial court erred by not permitting defendant to present evidence of the victim's prior drug purchase in a public place. Having remanded the case for a new trial, the Appellate Division did not address defendant's sentencing issues.

We, in turn, now reverse the judgment of the Appellate Division, finding defendant's proffered evidence failed to meet the threshold requirement of admissibility: relevancy. We remand to the Appellate Division for consideration of defendant's sentencing claims.

At trial, the State and defendant agreed that defendant shot and killed the victim during a purported drug purchase. Defendant claimed he acted in self-defense in killing the victim. The State disputed that claim, arguing defendant killed the victim during a robbery.

A recitation of the facts is in order, gleaned from the record below. While home on summer break from college, the victim, his friend Craig, and a few other friends sought out oxycodone pills to "get high." Craig and the victim had previously purchased oxycodone from a supplier, John. (We use fictitious names for the witnesses.) John had no supplies but referred the victim to defendant.

Defendant and the victim negotiated the price for the oxycodone and arranged for the purchase. While Craig and the victim drove to meet defendant, the victim and defendant text-messaged each other to finalize the particulars of the location and the drug exchange. Defendant rejected the victim's suggestion that they meet in a public place, insisting instead on meeting at an apartment building in Montclair. Defendant also demanded he be given the money up front, after which he would "run upstairs" to retrieve the drugs for the victim. Instead, the victim suggested he would drive up to the building where the exchange could be made from the car. Defendant

rejected that idea and insisted that they make the exchange in the apartment hallway.

As the victim and Craig approached in their car, they spotted defendant on the street waving them down. After defendant entered Craig's car, he made an additional demand: he would make the sale only if just one of them went in the building with all the money. Agreeing, the victim took $900 in cash and followed defendant into the building. Craig pulled the car around the block.

Moments later, Craig heard two gunshots coming from inside the building. Craig waited a moment and called the victim's cell phone. It went unanswered. Afraid for his own life, Craig sped away and called the police.

Upon arrival, the police entered the hallway and found the victim dead in the stairwell from gunshots to his abdomen and to the back of his head. The gunshot to the victim's head was fatal. The police recovered $500 from the victim's body.

On the night of the shooting, defendant made a series of admissions to several of his cohorts: he never had any drugs to sell because his intent was to rob the victim; he carried the gun to the transaction; a scuffle ensued when he attempted to rob the victim; and he shot the victim in the leg, then in the head, took some of his money, and then ran.

4

The following day, Craig gave a statement to the police about the shooting, telling the officers about the victim's agreement to meet with defendant in Montclair to purchase oxycodone. Craig also disclosed the victim's prior drug deals with John, all of which went "very smoothly." Craig reviewed a photo array, positively identifying defendant as the individual he picked up in his car and saw enter the building with the victim before hearing two gunshots.

The police later arrested defendant and charged him in connection with the homicide. After his arrest, and in full contradiction of the statements he made to his cohorts, defendant told investigators he had planned to sell the victim oxycodone all along, that he had stashed the pills in the building, and when he took the pills out to make the exchange, the victim brandished a handgun and attempted to "take my drugs." According to defendant, he and the victim wrestled for the weapon. During the ensuing struggle, the handgun went off twice, striking the victim first in the leg and then in his head. After the second shot, defendant picked up the gun and ran from the building. He later discarded his shirt and the gun.

A grand jury indicted defendant for murder, felony murder, robbery, conspiracy to commit robbery, and various weapon and drug offenses.

In an effort to establish that the victim brought the handgun used in the homicide, defendant moved at a pretrial N.J.R.E. 104 hearing to cross-examine Craig about his statement to the police concerning his and the victim's prior drug transactions with John. Although Craig referenced multiple drug deals in his statement to the police, the parties focused on one particular transaction that allegedly transpired in December 2011 at a public mall.

At the pretrial Rule 104 hearing, defendant argued that the victim's previous drug transaction with John demonstrated that the victim purchased narcotics not from physicians but on the "streets," from which one could infer that the victim knew of the risks and dangers associated with purchasing drugs on the "streets." Defendant hypothesized that because the victim was aware of those risks and dangers, the victim developed a self-protective pattern of carrying a firearm with him when he purchased drugs on the "streets." Defendant argued that pattern supported his theory that the victim brought the handgun used in his own homicide when he met with defendant to purchase narcotics in July 2012.

When probed by the trial court, defense counsel candidly admitted that he knew of no violent interaction that took place in any drug transaction involving the victim or Craig. All parties agreed that neither the victim nor Craig nor John brought a handgun to the December 2011 transaction.

The trial court ultimately denied defendant's motion. Relying on State v. Cofield, 127 N.J. 328 (1992), and N.J.R.E. 404(b), the trial court found defendant's proffered evidence inadmissible because the July 2012 transaction and the December 2011 transaction were too dissimilar. The trial court was skeptical the December 2011 sale occurred at all, explaining that defendant could not verify the transaction had actually happened. The trial court acknowledged that defendant's purpose in presenting the evidence was to establish the victim's desperation as an alleged drug addict -- desperation that would theoretically have led the victim to bring a handgun with him to meet defendant. The trial court ruled there was nothing in the record to support multiple inferences that because the victim was conjectured to be a drug addict, having previously purchased drugs on the "streets," he was desperate enough to arm himself when meeting with defendant.

Following a trial, the jury found defendant guilty of aggravated manslaughter as a lesser-included offense of first-degree knowing and purposeful murder. The jury also found defendant guilty of felony murder, robbery, and the remaining firearm and controlled dangerous substance offenses of the indictment. At sentencing, the trial judge sentenced defendant to fifty years imprisonment subject to an 85% parole disqualifier under the No Early Release Act, N.J.S.A. 2C:43-7.2, for felony murder. The judge then

7

merged defendant's remaining convictions into defendant's felony murder conviction.

Defendant appealed his convictions and sentence, arguing that the trial court erred by: (1) not allowing defendant to cross-examine Craig about his and the victim's December 2011 drug transaction with John to support his self-defense claim; and (2) imposing an excessive sentence.

In reversing defendant's convictions, the Appellate Division ruled that the trial court erred by not allowing defendant to introduce relevant exculpatory evidence of the victim's prior drug purchase to support his self-defense claim. The Appellate Division determined that the trial court erroneously applied Cofield and Rule 404(b) to exclude defendant's proffered evidence. The Appellate Division explained that Cofield and Rule 404(b) are inapplicable when a defendant seeks to present other-crime evidence defensively. Relying on State v. Weaver, 219 N.J. 131 (2014), the appellate court reasoned a defendant is permitted to present other-crime evidence defensively so long as the evidence is relevant under Rule 401 and not excludable under Rule 403 of the New Jersey Rules of Evidence.

Applying that standard, the Appellate Division determined that defendant's proffered evidence should have been admitted because the victim's "state of enhanced vigilance, stemming from the drug transaction out

8

of public view, was somewhat supportive of the defense that [the victim] brought a gun to the sale." Because the Appellate Division reversed defendant's convictions and ordered a new trial, the court did not consider defendant's excessive sentencing claim.

We granted the State's petition for certification. 236 N.J. 235 (2018). We also granted the Office of the Attorney General's motion for leave to appear as amicus curiae.

## II.

The State argues that the Appellate Division misapplied the Rules of Evidence when it reversed the trial court's decision to exclude evidence of the victim's previous drug transaction with John and Craig. The State contends that defendant's proffered evidence was irrelevant and, therefore, inadmissible because the victim's involvement in the December 2011 transaction did not negate defendant's guilt or support his theory that the victim carried a handgun and was the initial aggressor in the July 2012 drug transaction. The State asserts that the two drug transactions were too dissimilar and had no bearing on defendant's self-defense claim.

The Attorney General echoes many of the State's arguments that defendant's proffered evidence was irrelevant and inadmissible. The Attorney General also contends that the Appellate Division failed to properly defer to

the trial court's factual findings and supplanted the trial court's judgment with its own.

Defendant contends that the trial court wrongfully excluded his proffered evidence and asks this Court to affirm the Appellate Division's decision. Defendant argues that the trial court incorrectly applied the Cofield standard to exclude his proffered evidence. Defendant asserts that the trial court should have applied the simple relevance standard under Rule 401 to determine if his proffered evidence was admissible. Defendant maintains the evidence was relevant because it would have permitted the jury to infer that the victim brought the handgun to the July 2012 transaction. According to defendant, his proffered evidence would explain why the victim requested to meet with defendant in a public place. Because the victim could not meet with defendant in a public setting, defendant posits it is more likely the victim brought the handgun with him as a safety precaution.

### III.

Our legal system calls upon trial courts to perform the vital gatekeeping function of ensuring "that unreliable, misleading evidence is not admitted." State v. Chen, 208 N.J. 307, 318 (2011). Ordinarily, we review a trial court's evidentiary rulings under a deferential standard and will "uphold [the trial court's] determinations 'absent a showing of an abuse of discretion.'" State v.

10

Scott, 229 N.J. 469, 479 (2017) (quoting State v. Perry, 225 N.J. 222, 233 (2016)).  Under that standard, "[a] reviewing court must not 'substitute its own judgment for that of the trial court' unless there was a 'clear error in judgment'-- a ruling 'so wide of the mark that a manifest denial of justice resulted.'"  Ibid. (quoting Perry, 225 N.J. at 233).

If the trial court fails to apply the proper legal standard in determining the admissibility of proffered evidence, we review the trial court's evidentiary rulings de novo.  See, e.g., State v. Garrison, 228 N.J. 182, 194 (2017) (applying de novo review when the trial court failed to analyze other-crime evidence under Rule 404(b)); State v. Darby, 174 N.J. 509, 519 (2002) (same); accord Konop v. Rosen, 425 N.J. Super. 391, 401 (App. Div. 2012) ("'When the trial court fails to apply the proper test in analyzing the admissibility of proffered evidence,' our review is de novo."  (internal brackets removed) (quoting Pressler & Verniero, Current N.J. Court Rules, cmt. 4.6 on R. 2:10-2 (2012))).

Applying those standards to the facts of this case, we agree with the Appellate Division that the evidence rules and case law relied on by the trial court were not apt.  We find, however, that the proffered evidence was not relevant under Rule 401, and so, the evidence was inadmissible.

11

A.

When, as here, a defendant seeks to use other-crime evidence defensively -- sometimes referred to as reverse 404(b) evidence -- that defendant is free to present such evidence unconstrained by the admissibility requirements we promulgated in Cofield. "When a person charged with a criminal offense seeks to use other-crimes evidence defensively, the Cofield standard does not govern because 'an accused is entitled to advance in his defense any evidence which may rationally tend to refute his guilt or buttress his innocence of the charge made.'" Weaver, 219 N.J. at 150 (quoting State v. Garfole, 76 N.J. 445, 453 (1978)). A defendant is permitted to use other-crime evidence defensively so long as such evidence "tends, alone or together with other evidence, to negate his guilt" or support his innocence of the charges against him. Garfole, 76 N.J. at 453. To determine whether a defendant may use other-crime evidence, courts must apply the "simple" relevance standard of Rule 401. State v. Cook, 179 N.J. 533, 566 (2004) (quoting Garfole, 76 N.J. at 452-53).

We therefore agree with the Appellate Division's determination that the trial court should have considered the admissibility of the evidence under Rule 401 rather than Rule 404(b). We part ways with the appellate court's determination that the evidence was relevant and therefore admissible.

12

B.

"Relevancy is the hallmark of admissibility of evidence." Darby, 174 N.J. at 519. "Evidence must be relevant for it to be admissible," State v. Scharf, 225 N.J. 547, 568 (2016), and "all relevant evidence is admissible" unless excluded by the Rules of Evidence or other law, N.J.R.E. 402. Evidence is relevant if it has "a tendency in reason to prove or disprove any fact of consequence to the determination of the action." N.J.R.E. 401. There are two components to relevance: probative value and materiality. State v. Buckley, 216 N.J. 249, 261 (2013); accord 1 McCormick on Evidence § 185 (7th ed. 2013).

To be relevant, the evidence must first have probative value -- it must have a "tendency in reason to prove or disprove" a fact. N.J.R.E. 401; see also Perry, 225 N.J. at 237 ("[T]he 'probative value' of evidence is determined by 'its tendency to establish the proposition that it is offered to prove.'" (quoting State v. Garron, 177 N.J. 147, 167 n.2 (2003))). To determine whether evidence has probative value, courts should "focus on the logical connection between the proffered evidence and a fact in issue, or the tendency of [the] evidence to establish the proposition that it is offered to prove." Griffin v. City of East Orange, 225 N.J. 400, 413 (2016) (internal quotation marks and brackets in original omitted) (quoting Green v. N.J. Mfrs. Ins. Co., 160 N.J.

13

480, 492 (1999)). "To say that 'evidence is irrelevant in the sense that it lacks probative value' means that it 'does not justify any reasonable inference as to the fact in question.'" Verdicchio v. Ricca, 179 N.J. 1, 33-34 (2004) (quoting State v. Allison, 208 N.J. Super. 9, 17 (App. Div. 1985)).

Necessarily, for evidence to be relevant, it must also be material. McCormick, § 185; see also Garron, 177 N.J. at 167 n.2. "The 'materiality' of evidence concerns the strength of the relation between the proposition for which it is offered and an issue in the case." Garron, 177 N.J. at 167 n.2; see also McCormick, § 185, at 994 (stating that materiality "looks to the relation between the propositions that the evidence is offered to prove and the issues in the case"). "A material fact is one which is really in issue in the case." Buckley, 216 N.J. at 261 (quoting State v. Hutchins, 241 N.J. Super. 353, 359 (App. Div. 1990)).

Here, defendant sought to prove that the victim brought a handgun to the July 2012 transaction by introducing evidence about an earlier transaction to which the victim did not bring a handgun. Before the trial court, defense counsel focused on the evidence's potential to support the argument that defendant was aware of the dangers posed by "street" transactions and so he armed himself for protection when he made those deals. Defendant now asserts that, unlike the December 2011 transaction, the victim could not

14

negotiate the location of his transaction with defendant, was concerned for his safety, and therefore brought the handgun used in the shooting as a safety precaution.

Against the backdrop of the Rule 401 standards previously set forth, defendant's proffered evidence was not relevant because it lacked probative value -- that is, the evidence did not have a tendency to prove the proposition for which it was offered. See Perry, 225 N.J. at 237. Defendant's evidence could not tend to prove that the victim brought a handgun to the July 2012 "street" transaction because there was no evidence that the victim brought a firearm to the December 2011 "street" transaction. See Griffin, 225 N.J. at 413. Indeed, the victim's transaction with John in December 2011 was a brief, nonviolent drug deal. There was no evidence that the victim brought a handgun to the December 2011 transaction or any of the other transactions mentioned in Craig's statement to the police. And, there was no evidence that those transactions were violent in nature.

Nor did the victim's unarmed, nonviolent transaction with John support the theory advanced by defense counsel before this Court -- that because the victim could not meet with defendant in a public place, he armed himself for protection when he met with defendant. In the context of this case, the failure to carry a weapon in one situation, without more, cannot reasonably support an

15

inference that a weapon was carried in another situation. Simply put, defendant's proffered evidence was speculative, unproven, and ultimately irrelevant; it could not reasonably give rise to the inferences the defense sought to draw. Defendant failed to establish the "logical connection" required for relevance purposes between the evidence he sought to admit and the present case, and the evidence is therefore inadmissible under Rule 401.

And even if it were relevant, the evidence would be subject to exclusion under Rule 403, which requires courts to exclude relevant evidence "if its probative value is substantially outweighed by the risk of (a) undue prejudice, confusion of issues, or misleading the jury or (b) undue delay, waste of time, or needless presentation of cumulative evidence."

Admitting defendant's proffered evidence would have resulted in the needless presentation of cumulative evidence. The text messages between the victim and defendant before the July 2012 drug deal -- which were read to the jury -- demonstrated the victim's apprehensions about meeting with defendant. The messages revealed that the victim wanted to meet in a public place and when defendant rebuffed the victim's request, the victim told defendant he did not want to meet inside the residence defendant suggested. From those text messages, the jury could have readily inferred the victim's safety concerns and his desire to take precautions to ensure his safety -- such as conducting the

transaction in a public setting -- without reference to any of the victim's prior drug transactions with John. Because other evidence had been admitted that tended to support the limited point for which defendant wished to introduce the proffered evidence, his evidence was subject to exclusion. See State v. Stevens, 115 N.J. 289, 303 (1989) (requiring trial courts to consider whether other evidence can serve the same purpose for which other-crime evidence is proffered when determining the admissibility of the other-crime evidence).

Although we find the evidence cumulative in a limited respect, our determination that it is speculative and ultimately irrelevant suffices to end the analysis there. In sum, we agree with the Appellate Division's determination that Rule 404(b) was inapplicable here, but we agree with the trial court's ultimate conclusion that the evidence was inadmissible.

## IV.

We reverse the judgment of the Appellate Division, reinstate defendant's convictions, and remand to the Appellate Division for consideration of defendant's sentencing claim.

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUSTICE TIMPONE'S opinion.