**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0940-16T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

RASUAN WILSON,

     Defendant-Appellant.

_____

Submitted October 15, 2018 – Decided December 14, 2018

Before Judges Sumners and Mitterhoff.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Indictment No. 13-09-2217.

Joseph E. Krakora, Public Defender, attorney for appellant (Rochelle Mareka Amelia Watson, Assistant Deputy Public Defender, of counsel and on the brief).

Theodore N. Stephens, II, Acting Essex County Prosecutor, attorney for respondent (Stephen Anton Pogany, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Following a retrial, defendant was found guilty of possession of firearm and possession of controlled dangerous substances (CDS) charges. He appeals arguing:

POINT I

BECAUSE CREDIBILITY WAS THE CRITICAL ISSUE AT TRIAL, THE IMPROPER RESTRICTION OF CROSS-EXAMINATION BEARING ON THE CREDIBILITY OF ONE OF THE KEY POLICE WITNESSES COUPLED WITH THE PROSECUTOR'S IMPROPER BOLSTERING OF BOTH POLICE OFFICERS' TESTIMONY, DEPRIVED DEFENDANT OF A FAIR TRIAL.

A. The Trial Judge Committed Reversible Error By Prohibiting Defense Counsel From Cross-Examining Sergeant Ruane About An Excessive-Force Judgment Against Him to Expose his Bias and Motive to Testify Falsely.

B. The Prosecutor's Exhortation That the Police Witnesses Were Credible Because Their Jobs and Their Standing Within The Police Department Are Secure Constituted Misconduct, Warranting Reversal. (Not Raised Below)

POINT II

BECAUSE THE TRIAL COURT CONSIDERED DEFENDANT'S PRIOR ARRESTS AND DISMISSED JUVENILE PETITIONS IN WEIGHING AGGRAVATING FACTORS THREE AND NINE; AND BECAUSE THE TRIAL COURT FAILED TO FIND MITIGATING FACTOR 11, THE MATTER SHOULD BE REMANDED FOR RESENTENCING.

2

Having considered the arguments presented and applicable law, we affirm.

I

Defendant was indicted for second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b); fourth-degree possession of a defaced firearm, N.J.SA. 2C:39-3(d); second-degree possession of a firearm while committing a CDS distribution offense, N.J.S.A. 2C:39-4.1; two counts of third-degree possession of CDS, N.J.S.A. 2C:35-10(a)(1); two counts of third-degree possession of CDS with the intent to distribute, N.J.S.A. 2C:35-5(a)(1), -5(b)(3); two counts of third-degree possession of CDS with the intent to distribute within 1000 feet of a school, N.J.S.A. 2C:35-7; two counts of second-degree possession of CDS with the intent to distribute within 500 feet of public property, N.J.S.A. 2C:39-7.1; fourth-degree possession with the intent to distribute marijuana, N.J.S.A. 2C:5(a)(1), -5(b)(12); third-degree possession with the intent to distribute marijuana within 1000 feet of a school, N.J.S.A. 2C:35-7; and third-degree possession with the intent to distribute marijuana within 500 feet of public property, N.J.S.A. 2C:35-7.1.

Prior to trial, the State dismissed all of the charges pertaining to the intent to distribute CDS offenses and the charge of possession of a firearm while committing a CDS intent to distribute offense. After three days of deliberations,

a mistrial was declared when the jury could not reach a verdict on the remaining charges of unlawful possession of a handgun, possession of a defaced firearm, and two counts of possession of CDS.

Three months later, defendant was re-tried before a different judge on the outstanding charges.[1] Carried over from the first trial was an evidentiary ruling granting the State's in limine motion to prevent defense counsel from questioning one of the arresting Newark police officers, Sergeant Thomas Ruane, about a jury verdict in a civil lawsuit in which he was found to have used excessive force in a shooting that killed two people, and resulted in a settlement in excess of one million dollars.[2] The judge rejected defendant's opposition that it was necessary to attack Sgt. Ruane's credibility by cross-examining him about the lawsuit. Defense counsel proffered to confine his cross-examination by asking Sgt. Ruane about the nature of the incident, and whether he: recalled the plaintiff; shot the plaintiff; and was found to have used excessive force and abused his office. The judge cited N.J.R.E. 403, 608, and 609, in barring that line of questioning to Sgt. Ruane.

---

[1] It was stipulated that defendant did not have a permit to legally possess the weapon, and that the weapon was missing its serial number, thereby making it a defaced firearm.

[2] Defendant did not attempt to revisit the ruling at the re-trial.

A-0940-16T3

The trial record reveals the following. On a sunlit early evening in June 2013, Officer Danny Costa and Sgt. Ruane were on routine patrol in a marked police vehicle in a neighborhood comprised of a mix of residential townhouses, owned by the Newark Housing Authority (NHA), and commercial properties. Noticing defendant and another man talking – but not engaged in any suspected criminal activity – while standing between two townhouses, Sgt. Ruane parked the vehicle about thirty feet away from them in order to conduct some community policing. Neither officer knew, nor had any prior contact with either man.

As the uniformed officers exited the vehicle and approached the men, according to Officer Costa, defendant "strain[ed] himself to face me," and then reached in the center of his back near his waistband to pull out a black object believed to be a handgun. Upon seeing defendant drop the object over an adjacent wooden fence and hearing a loud metallic noise when it hit the concrete, Officer Costa shouted "Gun!" to alert Sgt. Ruane. Sgt. Ruane also asserted that he saw defendant discard a black object over the fence and heard the sound of metal hitting the concrete. However, the police incident report, which Officer Costa authored, only described defendant removing a "dark object" from his

waistband and it made no mention of either officer seeing the barrel of a gun or the gun itself.

Officer Costa retrieved a black handgun with a wooden handle from behind the fence where he saw defendant dispose of the object. Defendant was arrested and searched. Defendant was found to be in possession of Oxycodone, a generic form of Xanax, and marijuana. The other man, who was talking with defendant, walked away and was never located or identified.

The police did not seek to determine if surveillance cameras in the area had recorded defendant's alleged possession of the handgun because they believed corroborative evidence was not necessary to their investigation. Officer Costa did not recall seeing any surveillance cameras that may have recorded the incident, but he did not answer a question on the police report about whether a surveillance camera was visible at the scene of the incident. Because fingerprint analysis did not reveal defendant's fingerprint on the handgun, the State presented an expert, who explained that it was difficult to obtain a fingerprint off a handgun, particularly a handgun like the one recovered in this case.

Defendant exercised his right not to testify. He did, however, present two witnesses. His girlfriend, the mother of his children, testified that although she

6

did not observe the police drive up and place defendant under arrest, he did not have a handgun. To support her statement, she detailed what she and defendant did that day prior to his arrest. The NHA's Manager of Public Safety testified that there were NHA surveillance cameras in the area of defendant's arrest, but that the police did not request to view any recording that might have depicted the incident. Yet, he was not aware if the authority's surveillance cameras in the area were operational on the day of the incident.

During summation, defense counsel maintained that defendant never possessed the handgun and was falsely arrested. He argued the police officers' testimony was not credible and unsupported by corroborative evidence, such as surveillance videos and fingerprints. To refute counsel's assertion, the prosecutor stated:

> The State submits to you that Officer Costa and Sergeant Ruane have a low interest in the outcome of this case. Because after this incident occurred on June 12[], 2013, they both continued to be involved with the Newark Police Department, and they both continue to be involved in other cases.

There was no objection to these comments.

The jury found defendant guilty on all charges. Defendant was later sentenced to an aggregate term of seven years of incarceration, with three years and six months of parole ineligibility.

7

We first address defendant's argument in Point I that the trial judge erred in granting the State's in limine motion to bar him from cross-examining Sgt. Ruane regarding the incident for which a civil jury found him liable for using excessive force.[3] Because his conviction turned on the credibility of the officers' testimony, defendant argues the ruling denied him due process and a fair trial because he was not allowed to present a defense by confronting Sgt. Ruane. U.S. Const. amends V, VI, XIV; N.J. Const. art. I ¶ 1, 10.

A judge's decision to admit or exclude evidence is "entitled to deference absent a showing of an abuse of discretion, i.e., [that] there has been a clear error of judgment." Griffin v. City of E. Orange, 225 N.J. 400, 413 (2016) (alteration in original) (quoting State v. Brown, 170 N.J. 138, 147 (2001)). "Although a trial court retains broad discretion in determining the admissibility of evidence, that discretion is abused when relevant evidence offered by the defense and necessary for a fair trial is kept from the jury." State v. Cope, 224 N.J. 530,

---

[3] Defendant's also asserts, "the trial judge denied defendant's request to examine Costa and Ruane's internal affairs records in camera." However, because he did not brief that issue, we deem it abandoned. See Pressler & Verniero, Current N.J. Court Rules, cmt. 4 on R. 2:6-2 (2018); see also Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) ("An issue not briefed on appeal is deemed waived.").

554-55 (2016). "Thus, we will reverse an evidentiary ruling only if it 'was so wide [of] the mark that a manifest denial of justice resulted.'" Ibid. (quoting Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492 (1999)).

The Sixth Amendment to the Constitution of the United States and Article I, Paragraph 10 of our state Constitution guarantee an accused in a criminal case the right to confront adverse witnesses. State v. Guenther, 181 N.J. 129, 147 (2004). "A defendant's right to confrontation is exercised through cross-examination, which is recognized as the most effective means of testing the State's evidence and ensuring its reliability." Ibid. (citations omitted). The Confrontation Clause was not, however, "intended to sweep aside all evidence rules regulating the manner in which a witness is impeached with regard to general credibility." Id. at 150 (citing Davis v. Alaska, 415 U.S. 308, 321, (1974)) (Stewart, J., concurring).

In this case, we cannot conclude the initial trial judge abused his discretion in applying N.J.R.E. 403 and N.J.R.E. 608 to bar defendant's attorney from questioning Sgt. Ruane about the incident in which the civil jury found that he used excessive force in a shooting.[4] Under N.J.R.E. 403, evidence that is

---

[4] As for the trial court's consideration of N.J.R.E. 609, the rule has no bearing on the State's in limine motion. The rule addresses the admission of a witness's conviction of a crime. Sgt. Ruane was not convicted of a crime.

relevant may be inadmissible if the risk of prejudice substantially outweighs its probative value. Relevant evidence is any evidence that has "a tendency in reason to prove or disprove any fact of consequence to the determination of the action." State v. Darby, 174 N.J. 509, 519 (2002) (quoting N.J.R.E. 401). In determining relevance, "the inquiry should focus on 'the logical connection between the proffered evidence and a fact in issue.'" Ibid. (quoting State v. Hutchins, 241 N.J. Super. 353, 358 (App. Div. 1990)). The required logical connection has been satisfied "if the evidence makes a desired inference more probable than it would be if the evidence were not admitted." State v. Garrison, 228 N.J. 182, 195 (2017) (quoting State v. Williams, 190 N.J. 114, 123 (2007)).

Furthermore, N.J.R.E. 608, which governs the admission of character evidence for truthfulness or untruthfulness, provides:

> (a) The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, provided, however, that the evidence relates only to the witness' character for truthfulness or untruthfulness, and provided further that evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise. Except as otherwise provided by [Rule] 609 and by paragraph (b) of this rule, a trait of character cannot be proved by specific instances of conduct.

A-0940-16T3

> (b) The credibility of a witness in a criminal case may be attacked by evidence that the witness made a prior false accusation against any person of a crime similar to the crime with which defendant is charged if the judge preliminarily determines, by a hearing pursuant to [Rule] 104(a), that the witness knowingly made the prior false accusation.

Our evidence rules "bar 'the use of prior instances of conduct to attack the credibility of a witness for two essential reasons: to prevent unfairness to the witness and to avoid confusion of the issues before the jury.'" State v. Scott, 229 N.J. 469, 498 (2017) (quoting Guenther, 181 N.J. at 141) (Albin, J., concurring). N.J.R.E. 608 "was designed to prevent unfair foraging into the witness's past" and to prevent "wide-ranging collateral attacks on the general credibility of a witness [that] would cause confusion of the true issues in the case." Guenther, 181 N.J. at 141-42.

Questioning Sgt. Ruane regarding the shooting incident was not probative of any issue relevant in this case, which involved a weapon and CDS possession charges against defendant. This case did not involve any allegations of resisting arrest, obstruction, or excessive force, and the prior civil case did not involve defendant or anyone he knew. We agree with the State that letting the jury know that Sgt. Ruane had used excessive force in a shooting that killed someone would only serve to besmirch Sgt. Ruane by attacking his character with a specific

11

prior act of misconduct. Based upon the record before us, the sought after testimony does not address Sgt. Ruane's character for truthfulness or untruthfulness, by "revealing possible biases, prejudices, or ulterior motives" as they relate to the issues in the case. State v. Harris, 316 N.J. Super. 384, 397 (App. Div. 1998). In addition, the application of our evidence rules did not unfairly limit the defense from confronting Sgt. Ruane's credibility. Indeed, the record shows that defendant's counsel questioned the sergeant extensively about his observation of defendant's handgun possession and the lack of corroborating evidence beyond the testimony of his partner Officer Costa. Thus, defendant's constitutional right to confrontation was not denied.

Next, we address defendant's contention in Point I that he was denied a fair trial due to the prosecutor's summation remark that Sgt. Ruane and Officer Costa gave impartial testimony because of their "low interest in the outcome of the case" and their jobs are unaffected by their testimony.

Because defendant did not raise this issue before the trial judge, we review it for plain error. R. 2:10-2; State v. Macon, 57 N.J. 325, 336 (1971). We will reverse on the basis of an unchallenged error only if it was "clearly capable of producing an unjust result[.]" Macon, 57 N.J. at 337. To reverse for plain error, we must determine that there is a real possibility that the error led to an unjust

A-0940-16T3

result, that is, "one sufficient to raise a reasonable doubt as to whether [it] led the jury to a result it otherwise might not have reached." Id. at 336.

We agree with defendant that the prosecutor's remark was inappropriate because it bolstered the credibility of the police officers. A prosecutor may not vouch for a police officer's credibility by stating the officer would not lie because of the magnitude of the charges, State v. Frost, 158 N.J. 76, 85 (1999), or because the officer had no motive to lie, State v. R.B., 183 N.J. 308, 331-32 (2005), or because the officer would face severe consequences if not truthful, State v. West, 145 N.J. Super. 226, 233-34 (App. Div. 1976). That said, to reverse a conviction, "'the prosecutor's conduct must have . . . substantially prejudiced defendant's fundamental right to have a jury fairly evaluate the merits of his defense.'" State v. Wakefield, 190 N.J. 397, 438 (2007) (quoting State v. Smith, 167 N.J. 158, 181-82 (2001)). One factor to consider is whether there was a proper and timely objection to the comment, State v. Jackson, 211 N.J. 394, 409 (2012), because the lack of any objection "'deprive[d] the court of an opportunity to take curative action[,]'" R.B., 183 N.J. at 333, (quoting Frost, 158 N.J. at 84), and indicates defense counsel "perceived no prejudice," State v. Smith, 212 N.J. 365, 407 (2012).

Despite the inappropriateness of the prosecutor's remark, we do not conclude, as defendant claims, that he was deprived of a fair trial. Considering the evidence presented at trial, defense counsel's challenge to the police officers' testimony, the fact that defense counsel did not object, and the entirety of the prosecutor's closing argument, the fleeting comment was clearly not capable of producing an unjust result. R. 2:10-2. Moreover, had defendant objected, the court could have easily cured any prejudice that might have occurred as the result of the prosecutor's remark.

IV

In Point II, defendant argues that re-sentencing is required because, in applying aggravating factors three and nine, the trial judge improperly considered his arrests as a juvenile and adult that did not result in convictions N.J.S.A. 2C:44-1(a)(3)(the risk of re-offense); -1(a)(9) (the need to deter). He also argues the judge failed to apply mitigating factor eleven. N.J.S.A. 2C:44-1(b)(11) (the imprisonment of the defendant would entail excessive hardship to himself or his dependents).

Review of a criminal sentence is limited; a reviewing court must decide "whether there is a 'clear showing of abuse of discretion.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (quoting State v. Whitaker, 79 N.J. 503, 512 (1979)).

14

Under this standard, a criminal sentence must be affirmed unless "(1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were not 'based upon competent credible evidence in the record;' or (3) 'the application of the guidelines to the facts' of the case 'shock[s] the judicial conscience.'" Ibid. (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)). If a sentencing court properly identifies and balances the factors and their existence is supported by sufficient credible evidence in the record, this court will affirm the sentence. See State v. Carey, 168 N.J. 413, 426-27 (2001); State v. Megargel, 143 N.J. 484, 493-94 (1996).

We do not conclude the judge used defendant's juvenile and adult arrest record solely to find that aggravating factors three and nine applied. See United States v. Berry, 553 F.3d 273, 282-84 (3d Cir. 2009) (noting the majority view of courts of appeal that sentencing courts may not base decisions "on a bare arrest record" because, without more, it is not proof of wrongdoing); State v. Tirone, 64 N.J. 222, 229 (1974) ("[A] defendant's arrest record is a factor which may be considered in the determination of an appropriate sentence so long as the sentencing judge does not infer guilt from charges which have not resulted in convictions."); State v. Green, 62 N.J. 547, 571 (1973) (holding the court may consider arrests but "shall not infer guilt as to any underlying charge with respect

15

to which the defendant does not admit his guilt"); <u>State v. Farrell</u>, 61 N.J. 99, 107 (1972) ("[U]nproved allegations of criminal conduct should not be considered by a sentencing judge."). In assessing the aggravating factors, the judge did not assume defendant's guilt of unproven crimes. Indeed, the record supports the judge's application of aggravating factors three and nine based upon defendant's convictions of third-degree possession of CDS, N.J.S.A. 2C35-10A(1), and two disorderly persons offenses: loitering for purposes of using, possessing, or selling CDS, N.J.S.A. 2C:33-2.1; and possessing drug paraphernalia, N.J.S.A. 2C:36-2.

In addition, we see no abuse of discretion where the judge chose not to apply mitigating factor eleven. The judge recognized that defendant supported his girlfriend and their child, as well as her older son from a prior relationship, but determined that the hardship of imprisonment was not excessive. Consequently, we are unpersuaded the judge erred in sentencing defendant, and the sentence does not shock our judicial conscience.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0940-16T3