809 A.2d 138

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
RODERICK S. DARBY, DEFENDANT–APPELLANT.

Argued September 9, 2002—Decided November 19, 2002.

*Alan I. Smith,* Designated Counsel, argued the cause for appellant (*Peter A. Garcia,* Acting Public Defender, attorney).

*Simon Louis Rosenbach,* Assistant Prosecutor, argued the cause for respondent (*Glenn Berman,* Middlesex County Prosecutor, attorney).

The opinion of the Court was delivered by

COLEMAN, J.

Defendant was convicted of first-degree robbery of a deli that occurred on October 12, 1998. During the course of that trial, the State was permitted to introduce other-crime evidence of a subsequent robbery for the sole purpose of bolstering the credibility of Basim Hobson, a critical prosecution witness. He testified that he and defendant committed both robberies. The critical issue presented in this appeal is whether the admission of that evidence deprived defendant of a fair trial. The trial court ruled against defendant and the Appellate Division affirmed. We reverse the conviction because evidence concerning the subsequent robbery was not admissible and because the prejudicial effect of that evidence requires a new trial.

## I.

On October 12, 1998, the Rainbow Deli in Edison was robbed at approximately 10:45 p.m. The State's evidence with respect to that robbery consisted of the following. Tina Henry, a clerk on duty, described the perpetrators as two masked men; one was taller and broader than the other. Henry reported that the shorter of the two robbers, later identified as defendant, threatened her with a gun while the other perpetrator, later identified as Basim Hobson, emptied the cash drawer behind the counter. Defendant pushed Henry into an office where a safe was located. When defendant and Hobson discovered the safe was not locked, they also emptied it. Before leaving the office, defendant and Hobson forced Henry and her co-worker to get under the desk. The two perpetrators then encountered a customer, Michele Nicita, as they were fleeing from the Rainbow Deli. Defendant pointed the gun at Nicita's head while stating: " 'Make believe you don't see this [;][d]on't say anything.' " Nicita notified the police as soon as the perpetrators ran from the premises.

Henry described the perpetrators to the police as one being taller than the other. She stated that the shorter of the two men was approximately five feet eight inches tall and wore a gray sweatshirt with blue writing on the front. He was the one who wielded the gun. The taller robber wore a gray sweatshirt with black pants. Henry reported that the perpetrators took $10,000 from the safe and approximately $2,000 in lottery money from the front area. Nicita described the gunman as being between five feet six inches and five feet seven inches tall and the other robber as being between five feet nine inches and five feet eleven inches tall. Although both perpetrators wore masks, the witnesses could see through the eye openings that they were "black."

Eleven days later, two masked men robbed a North Plainfield 7–11 store. An employee on duty at the time informed the police that one perpetrator held a gun to his head while the other robber took money from the register. An office where a safe was located was locked and the employee did not have a key. A surveillance

videotape system recorded the robbery. The videotape, lasting between ten seconds and one minute, showed two masked men robbing the store. During the course of that robbery, one of the perpetrators dropped his wallet in the store. The wallet belonged to Basim Hobson.

Following his arrest, Hobson gave the police a statement implicating himself and defendant in both robberies. Hobson also informed the police that he hid the gun and the clothing he wore during both robberies in the home of a friend where Hobson sometimes slept. A search warrant executed on those premises uncovered the clothing and a silver semi-automatic .38-caliber handgun. Under a plea agreement with the Middlesex County Prosecutor, Hobson pled guilty to, among other charges, the Rainbow Deli and the 7-11 store robberies. As part of the plea agreement, he agreed to testify against defendant whom he identified as the gunman in each robbery.

During the trial for the Rainbow Deli robbery, defendant's defense was that he was not a participant and that he had an alibi. Although defendant did not testify, his girlfriend testified that defendant was with her on the evenings of October 12 and 23, 1998 when the two robberies occurred. It was stipulated that defendant is five feet six inches tall, that Hobson is six feet two inches tall, and that both men are African American.

In an unpublished opinion, the Appellate Division accurately summarized Hobson's testimony as follows:

According to Hobson, on the night in question, the two men rode by the Rainbow Deli after 10:00 p.m. and parked the car in which they were riding a few doors up the street. Hobson was wearing jeans, a hooded sweatshirt, boots and a face mask. Defendant was wearing green sweat pants, a black hooded sweatshirt, a face mask, and black gloves. The two men waited in the bushes in the parking lot and then ran to the side window to look inside the store. After the last customer left the store, they entered. Defendant was holding the gun.

Hobson further testified that defendant made the male clerk get on the floor while he pointed a gun at his back and while Hobson grabbed the money from the drawers. Defendant then took the female clerk to the back office where they were soon joined by Hobson and the male clerk. After taking about $10,000 from the safe, Hobson ripped the phone out of the wall and the two perpetrators left the

store. After the robbery, defendant told Hobson to take the gun, so he "stashed" it in the attic of a friend's house where Hobson was keeping clothing.

Trial counsel for defendant agreed that Hobson's unredacted testimony concerning the 7–11 store robbery was admissible. The Appellate Division summarized that testimony as follows:

> According to Hobson, eleven days later, on October 23, 1998, at about midnight, defendant and Hobson drove by a "7–11" store in North Plainfield, Somerset County, which they decided to rob. They parked the car on a side street, hid on the side of the store, and waited for the last customer to leave. They then ran inside the "7–11" store with defendant again wielding the gun. There was "only one clerk" inside the store this time. Defendant put the gun to the clerk's head while Hobson took money from the cash register. Since the clerk did not have the key to the back office, defendant and Hobson left.
>
> Hobson claimed that the gun "was always loaded" and was loaded for both robberies. He positively identified defendant in court.

Prior to introducing the videotape into evidence, the prosecutor made an application to have it admitted as other-crime evidence. His uncertainty in respect of whether the legal standard for admitting other-crime evidence could be satisfied is reflected in his admission that categorizing it as other-crime evidence might be a "misnomer . . . because there is [no] clear and convincing independent evidence that, in fact, the defendant committed another armed robbery." Eventually, the prosecutor and the trial court agreed that the videotape was admissible as "demonstrative evidence" to corroborate Hobson's testimony that defendant was the gunman in the 7–11 store robbery and to corroborate his testimony concerning the circumstances surrounding Hobson's arrest.

Despite "agreeing" that Hobson's 7–11 store robbery testimony was admissible, counsel for defendant objected to the introduction of the videotape depicting the 7–11 store robbery. He argued that "I don't see why we have to bring out that armed robbery in this trial. Clearly, that is highly prejudicial." In addition, he argued that the videotape should be excluded from evidence because it was probative of no material fact in issue in respect of the Rainbow Deli robbery.

The videotape was played twice for the jury while Hobson was on the witness stand. Hobson identified defendant as the masked person holding a gun in the videotape.

The jury found defendant guilty of robbing the Rainbow Deli, conspiracy to commit robbery, and two charges of unlawful possession of a handgun. Subsequently, the same jury found defendant guilty of possession of a handgun by a previously convicted felon. After merging some offenses, the trial court sentenced defendant on the robbery to a mandatory extended term of life without parole eligibility.

The Appellate Division noted in its opinion that the brief filed in that court by defendant's counsel had not argued that defense counsel had objected in the trial court to Hobson's 7–11 store robbery testimony. At oral argument in that court, however, defense counsel contended that trial counsel had objected to both the introduction of Hobson's 7–11 store robbery testimony and the videotape. The Appellate Division agreed that counsel had objected to both. Nonetheless, that court found no reversible error. We granted defendant's petition for certification, limited to whether the videotape was admissible under *N.J.R.E.* 404(b) and *N.J.R.E.* 403. 170 *N.J.* 391, 788 *A.*2d 774 (2001). Subsequent to oral argument before this Court, we notified all counsel that we also intend to address whether Hobson's 7–11 store robbery testimony was admissible. Counsel have submitted supplemental briefs on that issue.

## II.

Defendant contends that the trial court failed to perform its gatekeeper role when it did not evaluate Hobson's testimony concerning the 7–11 store robbery and the videotape of that robbery in accordance with *State v. Cofield,* 127 *N.J.* 328, 605 *A.*2d 230 (1992), and its progeny. He also argues that the Appellate Division erred when it concluded that the videotape was not other-crime evidence and was properly used to enhance or corroborate Hobson's testimony that defendant was a co-perpetrator of the

Rainbow Deli robbery notwithstanding the fact that the videotape showed two unrecognizable masked robbers.

## A.

Our analysis must begin with a determination of whether Hobson's testimony concerning the 7–11 store robbery, or the videotape of that robbery, or both, constitute other-crime evidence. We hold that both the testimony and the videotape are other-crime evidence. Both refer to a robbery for which defendant was not on trial. It would be difficult to find a clearer example of other-crime evidence than Hobson's testimony concerning the 7–11 store robbery and the videotape of that robbery. But not all other-crime evidence is inadmissible.

Ordinarily, the admissibility of other-crime evidence is left to the trial court's discretion, and its decision is reviewed under an abuse of discretion standard. *State v. Marrero*, 148 *N.J.* 469, 483, 691 *A.*2d 293 (1997). Because the trial court failed to recognize that Hobson's testimony with respect to the 7–11 store robbery and the videotape were other-crime evidence, it did not apply the four-part test that has been distilled from decisional law for determining when such evidence is admissible. Hence, no deference is to be accorded the trial court's decision to admit that evidence; nor is that decision entitled to be reviewed under an abuse of discretion standard. We are, therefore, compelled to conduct a *de novo* review of whether the other-crime evidence was admissible.

## B.

New Jersey Rule of Evidence (*N.J.R.E.*) 404(b) circumscribes the use of other crimes, wrongs, or bad acts committed by an accused. Preliminarily, such evidence is admissible only if it is relevant to prove a fact genuinely in dispute "and the evidence is necessary as proof of the disputed issue." *State v. Hernandez*, 170 *N.J.* 106, 118–19, 784 *A.*2d 1225 (2001); *State v. Marrero*,

*supra*, 148 *N.J.* at 482, 691 *A.*2d 293; *State v. Oliver*, 133 *N.J.* 141, 151, 627 *A.*2d 144 (1993); *State v. Stevens*, 115 *N.J.* 289, 301, 558 *A.*2d 833 (1989). *N.J.R.E.* 404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the disposition of a person in order to show that he acted in conformity therewith. Such evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute.
>
> [*Ibid.*]

"After many years of decisional law determining when other-crime evidence is admissible, a four-part test has been distilled. That test is designed to 'avoid the over-use of [such] evidence,' " *State v. Marrero, supra*, 148 *N.J.* at 483, 691 *A.*2d 293 (quoting *State v. Cofield, supra*, 127 *N.J.* at 338, 605 *A.*2d 230), because of its "unique tendency to turn a jury against the defendant." *State v. Stevens, supra*, 115 *N.J.* at 302, 558 *A.*2d 833. The following four-part test has been established:

> 1. The evidence of the other crime must be admissible as relevant to a material issue;
>
> 2. It must be similar in kind and reasonably close in time to the offense charged;
>
> 3. The evidence of the other crime must be clear and convincing; and
>
> 4. The probative value of the evidence must not be outweighed by its apparent prejudice.
>
> [*State v. Cofield, supra*, 127 *N.J.* at 338, 605 *A.*2d 230 (citations omitted).]

Under the first prong of that test, the other-crime evidence must be relevant to a material issue genuinely in dispute. Generally, "[r]elevant evidence means evidence having a tendency in reason to prove or disprove any fact of consequence to the determination of the action." *N.J.R.E.* 401. Relevancy is the hallmark of admissibility of evidence. In determining whether evidence is relevant, the inquiry should focus on "the logical connection between the proffered evidence and a fact in issue." *State v. Hutchins*, 241 *N.J.Super.* 353, 358, 575 *A.*2d 35 (App.Div. 1990). " 'If the evidence offered makes the inference to be drawn more logical, then the evidence should be admitted unless otherwise excludable by a rule of law.' " *State v. G.V.*, 162 *N.J.* 252, 272–73, 744 *A.*2d 137 (2000)(Coleman, J., concurring in part and

dissenting in part)(quoting *State v. Covell,* 157 *N.J.* 554, 565, 725 *A.*2d 675 (1999)). In other words, "[t]o be relevant, evidence must have 'probative value, which is the tendency of the evidence to establish the proposition that it is offered to prove.' " *State v. Koskovich,* 168 *N.J.* 448, 480, 776 *A.*2d 144 (2001) (quoting *State v. Wilson,* 135 *N.J.* 4, 13, 637 *A.*2d 1237 (1994)). Once it is determined that the other-crime evidence is relevant to establish a fact genuinely in dispute, "the probative value of the proffered evidence [must] be carefully balanced against the danger that it will create undue prejudice against the defendant." *State v. Stevens, supra,* 115 *N.J.* at 302, 558 *A.*2d 833. "Consequently, the primary focus of [*N.J.R.E.* 404(b) ], when examined in conjunction with [*N.J.R.E.* 403], is to view it as a rule of exclusion rather than a rule of inclusion." *State v. Marrero, supra,* 148 *N.J.* at 482–83, 691 *A.*2d 293; *State v. Cofield, supra,* 127 *N.J.* at 337, 605 *A.*2d 230.

## C.

Applying those principles to the present case, we conclude that Hobson's testimony in respect of the 7–11 store robbery was not relevant and therefore inadmissible. The State argued that Hobson's other-crime testimony was used to support his credibility that he and defendant robbed the Rainbow Deli. Although *N.J.R.E.* 607 permitted the State to introduce extrinsic evidence to bolster Hobson's credibility, that rule has its limitations. Even prior consistent statements that are not other-crime evidence are inadmissible to bolster credibility if, under a *N.J.R.E.* 403 balancing, the probative value as to credibility is slight in comparison to a substantial danger of undue prejudice. *State v. Sullivan,* 24 *N.J.* 18, 39, 130 *A.*2d 610 (1957).

Consistent with the view that *N.J.R.E.* 404(b) is a rule of exclusion rather than a rule of inclusion, ordinarily other-crime evidence should not be admitted simply to bolster the credibility of a witness. There is no compelling reason to hold otherwise because uncorroborated accomplice testimony is sufficient both to

support a guilty verdict and to satisfy *Cofield's* third prong. *State v. Hernandez, supra,* 170 *N.J.* at 125, 784 *A.*2d 1225. If other-crime evidence is admissible merely to support the credibility of a witness, then the *Cofield* standard designed to severely limit the use of such highly inflammatory evidence becomes meaningless.

Similarly, we conclude that the videotape was inadmissible other-crime evidence. When the prosecutor sought to introduce the videotape, defense counsel questioned its relevancy by asking what was "the purpose of offering the evidence." The prosecutor and the trial court stated that "[i]t is demonstrative." Boiled down to its essentials, the prosecutor and the trial court believed that the videotape was relevant to corroborate Hobson's testimony that he and defendant committed the 7–11 store robbery. But the trial court and the prosecutor failed to recognize that the video-tape was other-crime evidence and referred to the videotape as demonstrative evidence. That inaccurate description did not con-fer admissibility. The videotape was not relevant and hence had no probative value. Clearly, it was not demonstrative evidence because the masked robbers recorded on the videotape were unrecognizable. Therefore, the videotape did not demonstrate that defendant committed the 7–11 store robbery. Nor did it corroborate Hobson's identification of defendant. Consequently, the videotape standing alone did not satisfy the *Cofield* admissibili-ty standard that the evidence must be clear and convincing.

Even if the other-crime evidence had satisfied the first three prongs of the *Cofield* standard, both Hobson's testimony and the videotape should have been excluded because the prejudicial effect far outweighed any probative value. "The temporal remote-ness of other-crime evidence affects ... [the] prejudicial effect on a defendant." *State v. Marrero, supra,* 148 *N.J.* at 491, 691 *A.*2d 293. Here, the other-crime evidence informed the jury that not only did defendant have the propensity to commit robberies, but that he used the same gun eleven days later to commit another robbery.

██ We are persuaded that the introduction of the other-crime evidence was not harmless error. The defense during the trial was a general denial of guilt. The prosecutor conceded during oral argument before us that the other-crime evidence introduced in this case was powerful. Without evidence that Hobson and defendant committed a second robbery eleven days later, the jury may well have disbelieved Hobson's testimony in respect of the Rainbow Deli robbery. Hobson was the only person who identified defendant as one of the perpetrators of the Rainbow Deli robbery. He met defendant for the first time on the day of that robbery. The prosecutor agrees that the jury could have rejected Hobson's testimony that defendant participated in the Rainbow Deli robbery because Hobson "had a criminal record and had repeatedly changed his position with respect to defendant's participation." Also, Hobson testified for the State against defendant pursuant to a favorable plea agreement. Thus, we conclude that, not only was the other-crime evidence not relevant and should have been excluded under a *N.J.R.E.* 403 balancing test, but that the admission of the prejudicial and inflammatory other-crime evidence " 'raise[s] a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached.' " *State v. Hightower,* 120 *N.J.* 378, 410, 577 *A.2d* 99 (1990) (quoting *State v. Bankston,* 63 *N.J.* 263, 273, 307 *A.2d* 65 (1973)). Accordingly, we conclude that the admission of the other-crime evidence was reversible error.

## III.

The judgment of the Appellate Division is reversed. The matter is remanded to the Law Division for a new trial.

*For reversal and remandment*—Chief Justice PORITZ and Justices COLEMAN, LONG, VERNIERO, LaVECCHIA, ZAZZALI and Judge PRESSLER—7.

*Opposed*—None.