# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1683-17T4

STATE OF NEW JERSEY IN THE
INTEREST OF K.B., a Juvenile.

_____

Argued May 2, 2019 – Decided May 28, 2019

Before Judges Simonelli, Whipple and Firko.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FJ-09-0830-17.

Susan L. Romeo, Assistant Deputy Public Defender, argued the cause for appellant K.B. (Joseph E. Krakora, Public Defender, attorney; Susan L. Romeo, of counsel and on the brief).

Alanna M. Jereb, Assistant Prosecutor, argued the cause for respondent State of New Jersey (Esther Suarez, Hudson County Prosecutor, attorney; Alanna M. Jereb, on the brief).

PER CURIAM

Defendant, K.B., a juvenile, appeals from a June 5, 2017 Family Part order of disposition for delinquency entered after a bench trial. For the reasons that follow, we reverse.

Based on a review of the record, we discern the following facts. Early in the morning on January 22, 2017, police responded to a report of gunshots on a residential street in Jersey City. No one identified or described the shooter. Detective Michael Burgess of the Jersey City Police Department responded to the scene and found shell casings from a nine-millimeter handgun on the sidewalk. He noticed two parked cars were struck by bullets. There were no witnesses and the police did not recover a gun. The evidence presented to the judge during the subsequent bench trial included surveillance videos from the neighborhood and police testimony about them.

Officer Jesse Hilburn obtained surveillance video from home cameras on the residential street where the shots were fired. The cameras faced east and west down the street. The west-facing video showed a group of people leaning against a parked car, but only their legs were visible. The video showed flashes of light, which caused the people to scatter. A parked car immediately pulled out and backed down the street. Another video showed two men running east. The video did not show the shooter.

The east-facing video, at the same time stamp as the west-facing video, showed small flashes of light from across the street. After the gunfire, one or

two people ran across the street. No weapons or faces were visible, but the same car can be seen driving in reverse down the street.

The next set of videos came from a multi-family apartment building located one street east of where the shots were fired. One camera faced north and another faced south. A third camera faced west and a fourth camera showed the interior of the building's laundry room. The north- and south-facing cameras clearly showed two men in dark clothing running, later walking, south and away from the street where the shots were fired. Their faces were partially covered. The videos did not show weapons. The third camera showed the men turn right and then enter an alleyway adjacent to the apartment building.

The video from the apartment's laundry room showed a young man, dressed in black and wearing a black cap, step into the laundry room with something brown in his hand. He was visible for less than two seconds before he turned around and left. The video is blurry and dim.

One of the officers, Michael Sanchez, believed he recognized the person in the laundry room video as K.B., someone he had previously encountered in other investigations. Based on Sanchez's identification, K.B. was charged in a juvenile delinquency complaint alleging conduct, which if committed by an adult would constitute: second-degree unlawful possession of a weapon,

N.J.S.A. 2C:39-5(b); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1); fourth-degree possession of a firearm by a minor, N.J.S.A. 2C:58-6.1(b); and third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(2).

A trial was held in the Family Part on April 25 and May 16, 2017. Four police officers testified for the State. Detective Burgess testified that on January 22, 2017, he received a call about shots fired on a residential street. During Burgess's testimony, the State introduced, and later moved into evidence, photos of the cars struck by bullets and the shell casings scattered at the scene.

During Hilburn's testimony, the State played the east- and west-facing videos recovered from the street where the shots were fired. Hilburn testified the police could not locate any witnesses or victims of the shooting. On cross-examination, he acknowledged neither a shooter nor a gun was visible on the street-view videos.

Jersey City Police Officer Gilberto Vega also testified he recovered the four surveillance videos from the apartment building. Vega was unable to identify any individuals or point to any weapons in the three videos showing the street view. Vega testified as to what he believed the laundry-room video depicted, and the following exchange took place.

Q: Okay, Officer Vega. What did we just see?

A: We just saw the defendant with no mask on and a gun in his hand come into the laundry room, look directly at the camera, and then exit the laundry room.

Q: Officer Vega, why do you think there's a gun in his hand?

A: There's a gun in his hand, because it was the gun that I believe was used in the shooting that occurred approximately ten minutes prior to that.

Vega admitted he only knew defendant was the person who entered the laundry room based on information from other officers, not his own perception. When asked how he knew the object in the person's hand was a gun, he responded it was based on his "training and experience." He did not explain what his training and experience entailed.

Officer Sanchez identified the individual in the laundry-room video as defendant. During the course of his testimony, Sanchez only testified about the laundry-room video and did not view or identify defendant in the videos showing people scatter after flashes of light. Sanchez testified, "based on [his] observation," the object in the person's hand was a "small caliber handgun." Sanchez admitted he could not determine the caliber of the handgun.

Based on the evidence presented at trial, the judge found two men, one being defendant, fired handguns at a group of individuals. The judge found the

two individuals in the video wearing black and running down the street were the shooters and one of them was defendant. The judge found that defendant was the individual who entered the laundry room after running from the scene of the shooting. The judge speculated the car that reversed after the flashes of light was connected to the perpetrators of the shooting, though no testimony was offered that linked the vehicle to the perpetrators.[1]

The judge credited Officer Sanchez's testimony, finding his identification of defendant in the video believable, and he also relied on his own viewing of the video, saying that it

> corroborates everything else. So it's – it's not just the face. It's not just the features. It's not just the clothing, the color of the clothing, the headgear. It's also the fact that holding of the gun and everything establishes, in my view, that the State proved . . . beyond a reasonable doubt . . . that the person in that laundry room was [defendant.]

The judge found defendant guilty of all charges. Despite the fact that K.B. was only charged with third-degree aggravated assault, he was adjudicated delinquent of second-degree assault. He was sentenced to a three-year term of detention. This appeal followed.

---

[1] Testimony about this vehicle was used to establish continuity of the security cameras because the time stamps on the cameras were not identical.

A-1683-17T4

On appeal, defendant argues the following:

POINT I

K.B.'S ADJUDICATIONS FOR DELINQUENCY MUST BE REVERSED BECAUSE THE TRIAL COURT ERRONEOUSLY ALLOWED TWO POLICE OFFICERS TO PROVIDE INADMISSIBLE OPINION TESTIMONY THAT THE BLURRY BROWN OBJECT SEEN FOR TWO SECONDS ON THE BASEMENT LAUNDRY ROOM VIDEO WAS A HANDGUN.

POINT II

K.B. IS ENTITLED TO JUDGMENT OF ACQUITTAL ON THE CHARGES OF AGGRAVATED ASSAULT AND POSSESSION OF A WEAPON FOR AN UNLAWFUL PURPOSE BECAUSE: 1) EVEN IF K.B. WAS THE PERSON DEPICTED ON THE LAUNDRY ROOM VIDEO, THE STATE PRESENTED NO EVIDENCE THAT HE WAS ONE OF THE SHOOTERS; 2) EVEN IF THE BLURRY BROWN OBJECT SEEN ON THE LAUNDRY ROOM VIDEO WAS A GUN, THE STATE PRESENTED NO EVIDENCE THAT IT WAS THE [NINE-MILLIMETER] HANDGUN USED IN THE SHOOTINGS, OR THAT IT WAS EVEN A [NINE-MILLIMETER] GUN.

1. K.B.'s Motion For Judgment Of Acquittal.

2. The State's Failure To Present Evidence To Establish Identity And Unlawful Purpose.

POINT III

K.B. IS ENTITLED TO REVERSAL OF HIS CONVICTION IN COUNT FOUR FOR

7

DELINQUENCY BASED ON ALLEGATIONS OF SECOND-DEGREE AGGRAVATED ASSAULT UNDER N.J.S.A. 2C:12-1(b)(1), BECAUSE THE COMPLAINT CHARGED HIM ONLY WITH DELINQUENCY BASED ON THIRD-DEGREE AGGRAVATED ASSAULT UNDER N.J.S.A. 2C:12-1(b)(2), AND THE ADJUDICATION BASED ON A HIGHER DEGREE CRIME VIOLATED HIS RIGHT TO DUE PROCESS. (U.S. CONST. AMENDS. V, VI, XIV; N.J. CONST. ART. 1, PAR. 10) (not raised below).

POINT IV

THE TRIAL COURT ERRED WHEN IT PERMITTED OFFICER SANCHEZ TO TESTIFY THAT K.B. WAS THE PERSON ON THE VIDEO (not raised below).

I.

Ordinarily, "[a] trial court's evidentiary rulings are entitled to deference absent a showing an abuse of discretion" as a "clear error of judgment." State v. Nantambu, 221 N.J. 390, 402 (2015) (quoting State v. Harris, 209 N.J. 431, 439 (2012)). When a trial court fails to apply the proper legal standard to determine the admissibility of evidence, the court's decision is not entitled to deference and appellate review is de novo. State v. Darby, 174 N.J. 509, 518 (2002).

We focus our attention on the arguments in defendant's first point. After a careful review of the record, we consider the admission of lay-opinion

testimony in the present case as grounds for reversal. Here, the officers speculated that defendant possessed a gun and Officer Vega offered his opinion that defendant was holding a gun because he had committed a shooting.

When objections regarding the officers' opinion testimony were raised, the judge overruled the objections stating, "you don't need to be an expert to testify that someone was seen with a gun in his hand. And, you know, whether . . . that is believable or not and whether, in fact, that happened is for the [c]ourt to determine." Although the judge justified his decision by asserting credibility determinations would balance the testimony, the judge did not consider whether the testimony was admissible or inadmissible lay-opinion testimony. The judge did discuss the application of Rule 701 for lay-opinion testimony, but he characterized the identification of defendant as the person with the gun as fact testimony. See N.J.R.E. 701. Given the failure to assess the admissibility of the evidence, the judge's evidentiary decisions are reviewed de novo. Darby, 174 N.J. at 518.

Lay-opinion testimony is admissible if it: "(a) is rationally based on the perception of the witness and (b) will assist in understanding the witness'[s] testimony or in determining a fact in issue." N.J.R.E. 701. "[L]ay opinion testimony is limited to what was directly perceived by the witness and may not

rest on otherwise inadmissible hearsay." State v. McLean, 205 N.J. 438, 460 (2011). On the other hand, expert testimony allows experts "to explain the implications of observed behaviors that would otherwise fall outside the understanding of ordinary people on the jury." Ibid. "The Rule does not permit a witness to offer a lay opinion on a matter 'not within [the witness's] direct ken . . . and as to which the jury is as competent as he to form a conclusion[.]'" Id. at 459 (alterations in original) (quoting Brindley v. Firemen's Ins. Co., 35 N.J. Super. 1, 8 (App. Div. 1955)).

In McLean, our Supreme Court considered whether "there is a category of testimony that lies between those two spheres, governed by the lay opinion rule, that authorizes a police officer, after giving a factual recitation, to testify about a belief that the transaction he or she saw was a narcotics sale." Id. at 461. The Court declined to adopt such an approach, finding "we would be transforming testimony about an individual's observation of a series of events, the significance of which we have previously held does not fall outside the ken of the jury, into an opportunity for police officers to offer opinions on defendants' guilt." Ibid. (citation omitted).

The McLean Court focused on how the testifying officer had not been qualified to testify as an expert. Id. at 461-62. "As a result, the reference in the

10

question to his training and experience, coupled with the request that he testify about his belief as to what had happened, impermissibly asked for an expert opinion from a witness who had not been qualified to give one." Id. at 462. In McLean, a police detective testified about a drug-dealing surveillance operation. Id. at 445-46. A prosecutor asked what the detective believed happened "based on [his] own experience . . . and . . . training[.]" Id. at 446. The Court found this impermissibly elicited an expert opinion from a witness not qualified to give one. Id. at 463.

Our courts "have permitted police officers to testify as lay witnesses, based on their personal observations and their long experience in areas where expert testimony might otherwise be deemed necessary." State v. LaBrutto, 114 N.J. 187, 198 (1989). But admissibility "must be[] firmly rooted in the personal observations and perceptions of the lay witness in the traditional meaning of the Rule 701." McLean, 205 N.J. at 459.

Here, both Vega and Sanchez opined on the presence of a gun in the video. Vega was given the opportunity to narrate the video, with the prosecutor asking, "What did we just see?" and Vega responding, "We just saw the defendant with no mask on and a gun in his hand." The prosecutor further asked Vega, "why do you think there is a gun in his hand?" (Emphasis added). Vega then opined

about events he did not personally observe and about which he had no personal knowledge, stating, "[it] was the gun that I believe was used in the shooting that occurred approximately ten minutes prior." (Emphasis added). Lay-opinion testimony is limited to what was directly perceived by the witness. Id. at 460. Vega was not familiar with defendant and did not observe the shooting. Rather, he based his observation on his "training and experience."

His statement was prejudicial because he opined on the ultimate issue of the case: whether defendant was the shooter. See id. at 461. When defendant objected to this testimony, the judge overruled the objection without considering the admissibility of the statement, only its credibility.[2] The judge stated, "[t]his is what this witness is saying and it has to be determined whether what he's saying is correct, whether it will be given any weight. He will be cross-examined, but this is his testimony." As a result, the judge failed to perceive Vega offered an inadmissible lay opinion.

II.

---

[2] The credibility of Vega's conclusion is also somewhat dubious given that no witness placed K.B. at the scene, no witness saw who fired the shots and even if police identified K.B. as one of the two men running from the scene, which they did not do, the video shows other men running in different directions after the shots were fired.

A-1683-17T4

The present case also raises an issue of whether the fact finder was able to form his own conclusion about the alleged gun in the video. See id. at 459. Officer Sanchez testified that the object in the video was a "small caliber handgun."[3] Opinion, either lay or expert, "is not a vehicle for offering the view of the witness about a series of facts that the jury can evaluate for itself or an opportunity to express a view on guilt or innocence." Id. at 462.

The judge stated he repeatedly viewed the video of the laundry room and that was part of his basis for concluding defendant was holding a gun. The State contends this shows any erroneous admission was not harmful as the judge would have determined there was a gun in the video regardless of the officers' testimony. We disagree. If the judge were able to determine the individual was holding a gun based only on his own observation, then the officers' testimony was admitted in error because lay-opinion testimony is not a vehicle for offering

---

[3] The State cites State v. Brown, an unpublished case, for the proposition that an officer can testify regarding their belief a defendant possessed a weapon. No. A-4860-14 (App. Div. Dec. 4, 2017) (slip op. at 3). Unpublished opinions are not binding on any court and should not be relied upon for precedential authority. Pressler & Verniero, Current N.J. Court Rules, cmt. 2 on R. 1:36-3 (2019). Reliance on Brown is also misguided. There, officers observed a defendant carrying what appeared to be a machine gun, and a later traffic stop allowed them to retrieve the gun from the defendant's vehicle. Brown, slip op. at 3-4. In Brown, unlike the current case, the gun was recovered, there was no video for the fact finder to review, and an objection was not raised below.

information a factfinder could determine for themselves.  Ibid.  If the factfinder could not have determined that a gun was present absent the officers' testimony, then the State cannot argue the admission was harmless because the factfinder would have relied on the testimony.

Because the trial court's admission of impermissible lay opinion testimony provides sufficient reason for reversal, we need not reach the other arguments raised by defendant.

The disposition of delinquency is reversed and vacated.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14

A-1683-17T4