**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3935-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

EVAN C. MOORE,

     Defendant-Appellant.

_____

Submitted January 25, 2021 – Decided February 9, 2021

Before Judges Fasciale and Mayer.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Indictment No. 16-06-0366.

Joseph E. Krakora, Public Defender, attorney for appellant (Stefan Van Jura, Assistant Deputy Public Defender, of counsel and on the brief).

Michael H. Robertson, Somerset County Prosecutor, attorney for respondent (Amanda Frankel, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant appeals from an October 5, 2018 conviction related to a string of gas station robberies. Sahil Ram (Ram) participated in the robberies and testified that he and defendant, among others, attempted to purchase an illegal firearm prior to the commission of the robberies. Defendant did not request a limiting instruction or otherwise object to the jury charge. Instead, defendant's counsel attempted to impeach Ram's credibility and draw attention to Ram's inconsistencies during summation. Defendant now argues that the trial judge should have sua sponte provided a limiting instruction to the jury to eliminate prejudice from this portion of Ram's testimony. Ram's testimony regarding the attempted purchase of an illegal firearm was proper other-crimes evidence. His testimony established defendant's motive for committing the robberies and provided necessary background to inform the jury. We therefore disagree and affirm.

On January 30, 2016, Ram and Jaylen Folk (Folk) robbed a Bridgewater BP gas station, a Somerville Shell gas station, and attempted to rob a North Plainfield BP gas station. Police arrived during the North Plainfield BP robbery and arrested Folk. Ram evaded arrest.

In February 2016, defendant provided two statements to police regarding the robberies. In his first statement, defendant identified Ram and Folk after

seeing a news article about the robberies on the internet. He explained that he was with Ram and Folk earlier in the day because Ram was helping him sell his Xbox by putting him in touch with a purchaser. Defendant drove with Ram and Folk to New Brunswick, where they were robbed at gunpoint. Afterwards, defendant drove Ram and Folk back to Folk's house in Somerville, and defendant drove to his girlfriend's house in Rutherford. In his second statement, defendant told police that after the group was robbed in New Brunswick, he drove Ram and Folk to the Bridgewater, Somerville, and North Plainfield gas stations. Defendant explained that he did not know what Ram and Folk were doing, though he did suspect something was amiss when he heard Ram and Folk attempting to open a cash register with a screwdriver in the backseat of his vehicle. Defendant consented to a search of his vehicle, where police found two screwdrivers and a red bandana matching the one wore by Ram during the robberies.

Police later obtained Facebook messages between defendant and Ram from January 29 and January 30 where they discussed obtaining a firearm and robbery. Police asked defendant to return to clarify discrepancies between his two previous statements and the Facebook messages. Defendant explained that he picked up Ram, Folk, and J.B., an acquaintance of Ram, to meet with a person

A-3935-18

in New Brunswick. When they arrived, several people appeared and robbed them at gunpoint. Defendant reiterated that he drove Ram and Folk to the gas stations and added that he was aware that the cash register was stolen from the Somerville gas station. However, defendant maintained that he had "no clue what was going on," and although he stated that he told Ram and Folk that "if [they are] doing this, [they should] do this stuff on [their own, because defendant was] not going to be [a] part of that," defendant continued to follow their directions.

On June 8, 2016, a Somerset County grand jury charged defendant with two counts of first-degree robbery, N.J.S.A. 2C:15-1(a)(1), N.J.S.A. 2C:15-1(a)(2), and N.J.S.A. 2C:15-1(b) (counts one and three); two counts of third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d) (counts two and four); one count of second-degree attempted robbery, N.J.S.A. 2C:5-1(a)(3), N.J.S.A. 2C:5-1(a)(3), N.J.S.A. 2C:15-1(a)(1), and N.J.S.A 2C:15-1(a)(2) (counts five); and one count of second-degree conspiracy to commit robbery, N.J.S.A. 2C:15-1, N.J.S.A. 2C:5-2(a)(1), N.J.S.A. 2C:5-2(a)(2) (counts six).

Ram testified at defendant's trial as to the night of the robberies and defendant's involvement. He testified that he did not recall defendant

mentioning selling an Xbox. Instead, Ram stated that J.B. contacted him asking for help purchasing a gun. Ram knew of someone who could provide a gun, and asked defendant on Facebook to drive him and J.B. to New Brunswick to complete the sale in exchange for a share of the profit on the sale. Defendant agreed, picked up Ram, Folk, and J.B., and drove to New Brunswick, where they were robbed at gunpoint. Afterwards, defendant, Ram, Folk, and J.B. discussed "how [they were] going to get money to go back, because [they were] basically stranded, [defendant] had no cash . . . . And [Ram] felt remorse because [he] . . . thought the deal was going to go through." Ram testified that from that discussion defendant suggested robbing a gas station.

On October 5, 2018, the jury returned a verdict acquitting defendant of counts one and two, and convicting defendant of counts four, five, and six. The jury also convicted defendant of second-degree robbery as a lesser-included offense of count three. On December 21, 2018, the judge sentenced defendant to three concurrent three-year terms subject to the No Early Release Act, N.J.S.A. 2C:43-7.2, and a concurrent three-year term.

On appeal, defendant raises the following point for this court's consideration:

POINT I

DEFENDANT WAS DENIED A FAIR TRIAL BY THE TRIAL [JUDGE'S] FAILURE TO SANITIZE REFERENCE TO AN UNCHARGED CRIME OF ATTEMPTED UNLAWFUL POSSESSION OF A HANDGUN WHERE HIS DEFENSE WAS THAT HE WAS AN UNWITTING PARTICIPANT IN THE ROBBERIES. U.S. CONST. AMENDS. V AND XIV; N.J. CONST. ART. 1, PARS. 1, 9 AND 10. (Not Raised Below).

Defendant argues that Ram's testimony concerning his facilitation of an illegal sale and possession of a handgun was improper other-crimes evidence because it was not relevant to the charged robberies. Specifically, he argues that Ram's testimony does not satisfy prongs one and four of the four-prong test adopted in State v. Cofield, 127 N.J. 328 (1992), and was "clearly capable of producing an unjust result." Accord R. 2:10-2.

"When a defendant fails to object to an erroneous or omitted limiting instruction, it is viewed under the plain-error rule, Rule 2:10-2." State v. R.K., 220 N.J. 444, 456 (2015). An error "will be disregarded unless a reasonable doubt has been raised whether the jury came to a result that it otherwise might not have reached." Ibid. The defendant bears the burden of proving that a plain error exists. State v. Weston, 222 N.J. 277, 295 (2015).

6                                                          A-3935-18

N.J.R.E. 404(b)(1) prohibits the use of "evidence of other crimes, wrongs, or acts . . . to prove a person's disposition in order to show that on a particular occasion the person acted in conformity with such disposition." The rule does, however, permit the use of such evidence for other purposes, such as to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident when such matters are relevant to a material issue in dispute." N.J.R.E. 404(b)(2). "Because evidence of a defendant's previous misconduct 'has a unique tendency' to prejudice a jury, it must be admitted with caution." State v. Willis, 225 N.J. 85, 97 (2016) (quoting State v. Reddish, 181 N.J. 553, 608 (2004)). "[T]he party seeking to admit other-crimes evidence bears the burden of establishing that the probative value of the evidence is not outweighed by its apparent prejudice." Reddish, 181 N.J. at 608-09. And because the trial judge did not engage in a Cofield analysis, our review is de novo. See State v. Garrison, 228 N.J. 182, 194 (2017) (citing State v. Rose, 206 N.J. 141, 158 (2011)).

Our Supreme Court has set forth a four-prong case-by-case analysis judges must utilize to "avoid the over-use of extrinsic evidence of other crimes or wrongs:"

> 1. The evidence of the other crime must be admissible as relevant to a material issue;

A-3935-18

2. It must be similar in kind and reasonably close in time to the offense charged;

3. The evidence of the other crime must be clear and convincing; and

4. The probative value of the evidence must not be outweighed by its apparent prejudice.

[Cofield, 127 N.J. at 338 (citing Abraham P. Ordover, Balancing The Presumptions Of Guilt And Innocence: Rules 404(b), 608(b), And 609(b), 38 Emory L. J. 135, 160 (1989)).]

Like defendant, we focus on prongs one and four.

To satisfy the first prong of Cofield, the "proffered evidence must be 'relevant to a material issue genuinely in dispute.'" State v. Gillispie, 208 N.J. 59, 86 (2011) (quoting State v. Darby, 174 N.J. 509, 519 (2002)). Evidence is relevant if it tends "to prove or disprove any fact of consequence to the determination of the action." N.J.R.E. 401. "The analysis can include all evidentiary circumstances that tend to shed light on a defendant's motive and intent or which tend fairly to explain his actions, even though they may have occurred before the commission of the offense." State v. Skinner, 218 N.J. 496, 515 (2014) (citations and internal quotation marks omitted). "The main focus 'in determining the relevance of evidence is whether there is a logical connection

between the proffered evidence and a fact in issue.'" Garrison, 228 N.J. at 195

(quoting State v. J.M., 225 N.J. 146, 160 (2016)).

To satisfy the fourth prong of Cofield, the probative value of the evidence

must not be outweighed by its apparent prejudice. This is considered "the most

difficult part of the test." Garrison, 228 N.J. at 197 (quoting State v. Barden,

195 N.J. 375, 389 (2008)). "[I]f other less prejudicial evidence may be presented

to establish the same issue, the balance in the weighing process will tip in favor

of exclusion." State v. Green, 236 N.J. 71, 84 (2018) (alteration in original)

(quoting Rose, 206 N.J. at 161). However, "some types of evidence, such as

evidence of motive or intent, 'require a very strong showing of prejudice to

justify exclusion.'" Ibid. (quoting Garrison, 228 N.J. at 197).

The Court in Rose, rejecting the continued use of res gestae,[1] encouraged

trial judges to look to the "Rules of Evidence [as] the touchstone for the analysis

---

[1] Res gestae is an evidentiary doctrine

> defined as those circumstances which are the undesigned incidents of a particular litigated act, which are admissible when illustrative of such act . . . . Th[e] sole distinguishing feature is that [the evidence] should be the necessary incidents of the litigated at; necessary, in th[e] sense, that they are part of the immediate preparations for, or emanations of such act, and are not produced by the calculated policy of the actors.

of" other crimes evidence.  <u>Rose</u>, 206 N.J. at 179.  The Court adopted the Third Circuit's interpretation that "evidence that is currently admissible as background or 'completes the story' evidence under the inextricably intertwined test" would not be excluded.  <u>Id.</u> at 180 (quoting <u>United States v. Green</u>, 617 F.3d 233, 249 (3d Cir. 2010)).  "[M]ost, if not all, other crimes evidence currently admitted outside the framework of <u>Rule</u> 404(b) as 'background' evidence will remain admissible[.]"  <u>Id.</u> at 181 (quoting <u>Green</u>, 617 F.3d at 249).  The Court explained that "[j]ust as was recognized in <u>Green</u>, there is no reason that our courts cannot allow, under our <u>Rule</u> 404(b), evidence to be admitted for a similar 'necessary background' or, as otherwise stated, 'the need to avoid confusing the jury,' non-propensity purpose."  <u>Ibid.</u>

Ram's testimony satisfies the first <u>Cofield</u> prong because it is relevant to shed light on defendant's motive and intent for participating in the robberies, and fairly explains his actions.  <u>See</u> <u>Skinner</u>, 218 N.J. at 515.   Additionally, Ram's testimony assisted the jury by "completing the story" of the day in question and the events that led defendant and the others to rob gas stations.

> [<u>Rose</u>, 206 N.J. at 169 (quoting <u>Hunter v. State</u>, 40 N.J.L. 495, 538-39 (E. & A. 1878)).]

Ram's testimony further satisfies the fourth <u>Cofield</u> prong because defendant has not shown that its probative value is outweighed by its apparent prejudice. The events that immediately precipitated the gas station robberies are highly probative to show defendant's motive for participating in the gas station robberies. Moreover, there was more ample evidence to support defendant's conviction including the Facebook messages, Ram's testimony, and evidence found in defendant's car. The State did not utilize the testimony for the general proposition that defendant had a propensity for committing crimes, and defendant has not made the "strong showing of prejudice to justify exclusion." <u>Green</u>, 236 N.J. at 84 (quoting <u>Garrison</u>, 228 N.J. at 197). Ram's testimony regarding the New Brunswick robbery and alleged facilitation of the purchase of an illegal firearm does not constitute plain error.

Instead of requesting a limiting instruction or objecting to the jury instruction, defendant's counsel attempted to discredit Ram during cross-examination. Defendant's counsel successfully elicited from Ram that he did not mention purchasing a gun to the police, did not mention the New Brunswick robbery, and falsely stated that defendant was one of the robbers of the North Plainfield BP gas station. He also elicited from Ram that he only told the police

the truth of the events when he was reaching a plea agreement.  Defendant's

counsel utilized these inconsistencies in his summation:

> I suggest the statement given by . . . Ram to the police
> was an attempt to deceive for a specific purpose.  And
> that purpose was become he believed -- maybe at that
> time he knew that [defendant] had given information
> that he and . . . Folk were involved in these two
> incidences or three incidences.  He knew that.
>
> . . . .
>
> Then [Ram is] arrested.  Come in.  They ask him to give
> a statement.  Finally gives a statement, and that was
> where the transcript comes in.  And he is aggravated,
> doesn't like the fact . . . [defendant] is a snitch, told on
> him.
>
> So now [Ram is] going to say okay, you, now I'm going
> to get you.  Now, here's how I'm going to do it.  First,
> he does not tell the police they were in New Brunswick.
> And the purpose for being in New Brunswick, from
> what he says, was to get a gun for . . . [J.B.], who was
> in the car.

After attempting and failing to successfully convince the jury that Ram's

testimony could not be considered trustworthy, defendant now seeks to have

Ram's testimony excluded as overly prejudicial.  Defendant's counsel used

Ram's testimony in summation to drive home his contention that Ram's

testimony should be disregarded.  See State v. Adams, 194 N.J. 186, 208-09

(2008) (finding no plain error in a trial judge's failure to sua sponte provide a

A-3935-18

limiting instruction where "defense counsel thoroughly cross-examined [the witness] to challenge his credibility and [the witness's] lack of credibility was a major theme in closing arguments for the defense").  Although "[e]ven in the absence of a request, [a trial] judge should give a limiting instruction sua sponte where it is necessary to avoid an unjust result," Agha v. Feiner, 198 N.J. 50, 63 n.7 (2009), a trial judge need not "provide an instruction despite a party's calculated decision to waive it," State v. Brown, 138 N.J. 481, 535 (1994), overruled on other grounds, State v. Cooper, 151 N.J. 326, 377 (1997).  Here, it was not plain error for the trial judge to not sua sponte provide a limiting instruction to the jury regarding Ram's testimony about the attempted purchase of an illegal firearm.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3935-18