**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5361-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

SHAMECCA N. WHITFIELD,

     Defendant-Appellant.

_____

Submitted March 23, 2021 – Decided April 22, 2021

Before Judges Yannotti and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Municipal Appeal No. 18-020.

Bruno & Ferraro, attorneys for appellant (John W. Ferraro, of counsel and on the brief).

Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney for respondent (Monica do Outeiro, Assistant Prosecutor, of counsel and on the brief; Brendan Ruckert, Legal Assistant, on the brief).

PER CURIAM

Defendant Shamecca Whitfield appeals from a June 28, 2019 judgment entered following a de novo trial finding her guilty of shoplifting, N.J.S.A. 2C:20-11(b)(2), and imposing fines, community service, and ninety days in the Monmouth County Jail. We affirm.

We take the following facts from the record. The underlying incident occurred in February 2018 while defendant shopped at a supermarket in Freehold Township. Supermarket security cameras show defendant steered her shopping cart to the self-checkout area and began scanning her items. A cashier monitored a computer divided into four sections displaying the items each self-checkout customer scanned. The cashier occasionally left his position and floated between the customers, cleaning stations, and aiding them with finding price codes on their monitors in order to complete their checkout. At all times, defendant was no more than ten feet from the cashier.

Defendant pulled her cart up to a checkout monitor and began scanning her items, including household cleaning supplies and groceries. The cashier helped defendant begin the process. Defendant scanned ten items, which she placed into three bags. At that point, she retrieved a large detergent bottle from the cart and placed it on the counter, but did not scan it and instead returned to the cart to retrieve smaller items to place into the bags she already filled. Defendant scanned two items and started to fill a fourth and fifth shopping bag.

She asked the cashier for help, who came to her machine and entered data on her screen. Defendant then placed the detergent back into her cart. Defendant pulled the rest of the items, including the detergent, from her cart and placed them onto the counter. She then placed all five bags of scanned items into her cart and continued to scan the items on the counter.

Defendant scanned seven more items, which she placed into three more bags. She retrieved an item which appeared to be a head of a produce item and began searching at length for its code on her monitor. Once she located the code, she placed the item in a bag. Defendant retrieved another produce item from her cart, but could not locate its code for some time and opted instead to place the item back onto the counter, and scanned a package of eggs and placed it into a ninth bag. Defendant retrieved a mop from her cart, appeared to scan it, stared at the screen, entered some data, then placed the mop back into her cart. She then returned to the produce item she could not find the code for, located the code, placed it into a tenth bag, and put the bag in her cart. Defendant next retrieved the detergent from the counter, handled it the vicinity of the scanner, but placed it back onto the counter.

Defendant produced a card from her pocket, picked up the detergent, and paid for her items while simultaneously holding onto the detergent bottle with her other hand. She placed the bottle into an eleventh bag, placed it into her

cart, took her receipt, and began to exit the store. Defendant's checkout process lasted nine minutes, during which the traffic in the aisle ebbed and flowed and was either filled with customers or just defendant and the cashier. Defendant began to exit the aisle holding a long paper receipt in her hand.

As defendant was leaving, the cashier glanced at his monitor and immediately approached defendant, blocked her path, and an argument ensued. As defendant pushed the cart past the cashier, he grabbed the mop out of her cart and she grabbed it back, placed it in the cart, and left the store as the two exchanged words. The cashier called for assistance. Defendant made her way out to the parking lot, left her cart outside, and returned to the store with her receipt continuing the argument.

Defendant then returned to the cart and proceeded to walk across the parking lot where four store employees stopped her, wrested the cart away from her, and she and the employees returned toward the store. Approximately seven minutes later, two police vehicles arrived, and defendant can be seen on the outside security video speaking with each officer through the passenger side window of their respective police cruisers.

Inside the store, the security camera showed another employee appearing to check the items in the cart using a computer generated version of defendant's receipt. Both officers then appear in the video and took turns handling

defendant's receipt, comparing it to the store's printout. A supermarket employee then removed the mop and the detergent. The officers did not file charges and left the scene.

The supermarket filed a complaint alleging defendant shoplifted the detergent and mop having a total value of $30.98. The matter was tried in the municipal court and the only witness was the cashier who described the incident. He explained defendant "started ringing everything, placing it in the bagging area and doing it as normal people would . . . [and] she . . . rang everything completely up except for . . . [t]he mop and the detergent." He explained he checked his monitor and then "stopped [defendant] and asked her if [he] could have her receipt[ t]o check to make sure she paid for the items." He testified defendant "refused to give me her receipt. I said [']you didn't pay for the mop.['] I took the mop out of her cart. She pushed her cart towards me, hit me with her cart, and snatched the mop out of my hand[ and] . . . left out of the store."

On cross-examination, the cashier conceded he saw defendant remove the mop and the detergent from her cart, but did not see her scan the items. When defense counsel asked the cashier how may items defendant checked out, his response was "I have no idea," but then stated it was "at least [twenty] items." He could not recall how much defendant paid in total for her items. He testified defendant "said no" when he asked her for the receipt and said she had paid for

her items. The municipal court judge found the State proved beyond a reasonable doubt defendant shoplifted the detergent and imposed the fines, penalties, and jail time.

Defendant appealed and a de novo trial was held before the trial judge in the Law Division. Defense counsel argued the State had not met its burden because the mop and detergent were taken from defendant, but there was no proof she had not paid for them. Defense counsel also argued the State failed to prove defendant intentionally secreted the items. Counsel pointed to the video, which showed defendant "put [both items] near the scanner" contrary to the cashier's testimony. He noted the cashier never testified he "checked his monitor and saw that those items were not scanned."

Counsel also noted the totality of the circumstances did not support the guilty finding because defendant did not flee and "is seen waving down . . . the police officer because a minute later the . . . officer comes walking in the store with her receipt." Counsel noted the State failed to produce defendant's receipt and

> it would have been nice to know what the proportion cost-wise of the $5 mop and a $17 bottle of detergent was in relation to the entire purchase because if the entire purchase of those other twenty items was $30, then . . . you may be able to at least say, okay, a $5 item and a $17 item, . . . those are things that she intended to take. However, if those twenty items were $100, maybe the other conclusion is reasonable.

The trial judge reserved his decision in order to watch the video again.

When the matter returned, the judge placed his oral findings on the record and concluded "[t]he video evidence appears to clearly show that the defendant concealed and deprived [the supermarket] of the . . . detergent without paying for the item." The judge found the cashier's testimony that defendant did not scan the mop was "inaccurate" and after reviewing the video concluded the State had "not shown beyond a reasonable doubt that the defendant stole the mop [because the cashier's] monitor immediately registered a new entry on the top right square [corresponding to defendant's scanner]."

The judge reached a different conclusion regarding the detergent, stating:

> However, the same cannot be said for the . . . detergent. Once the . . . detergent remained to be scanned the defendant placed the item near the scanning zone. At that point [the checkout cashier] was in front of his personal monitor and carefully observed the defendant's behavior. She moved the detergent towards the scanner, but the video clearly showed that unlike the mop, the detergent never touched the square with the bar code reader.
>
> Additionally, as the defendant moved the detergent near the scanning area no new entry was registered on the top right screen of [the checkout cashier's] monitor. Consequently, [the cashier] scrolled through defendant's purchases to find the detergent which was ultimately unsuccessful.
>
> On the basis of the video evidence and [the cashier's] personal observations of . . . defendant's

behavior the [c]ourt finds that the defendant concealed the detergent without paying for the item beyond a reasonable doubt.

Defendant contends that the State has failed to prove that she purposely concealed the detergent and intentionally deprived [the supermarket] of the detergent without paying for the item. In particular she notes that even if the detergent were not successfully scanned the error was accidental for, one, the total price of the scanned items could have significantly outweighed the individual price of the detergent, thus, showing that the financially healthy defendant would have nevertheless been able to afford the detergent. Two, the video footage clearly establishes that [defendant] had sufficient funds through her credit/debit card. And, three, the defendant allegedly volunteered to give her receipt to the police officers to clear up any misunderstanding. . . .

Since conviction under the shoplifting [s]tatute is not dependent on a defendant's financial status and the video evidence does not clearly establish the defendant's financial capabilities the [c]ourt will summarily disregard the defendant's first two arguments. The video evidence shows beyond a reasonable doubt that the defendant purposely concealed the detergent. The defendant's failure to scan the detergent was no accident. Whenever she would scan an item, she would look at her monitor to see if the bar code scanner successfully registered the item. Once the defendant placed the detergent close to the scanning zone she looked at her screen and clicked the credit card/debit card button even though the detergent was not scanned as such. The defendant knew the . . . bar code scanner did not detect the detergent.

Furthermore, when [the cashier] approached the defendant and asked for her receipt, she belligerently attempted to shove him out of the way with her

shopping cart. Considering that she knew [the cashier] was a [supermarket] employee, the [c]ourt agrees with [the municipal court judge's] observation and finds that her behavior was strangely evasive. The fact that she provided the police officers with her receipt approximately a half an hour after the incident does not alter the [c]ourt's concern that at the time of the scanning she intentionally concealed the detergent and refused to allow [the cashier] to confirm her purchases.

. . . .

Lastly, the defendant relied on cases such as State [v.] Richardson, 452 N.J. Super. 124[ (App. Div. 2017)], [and] argues that due to the State's failure to introduce exculpatory evidence such as the defendant's receipt[,] the defendant is entitled to an adverse inference that the unproduced cash register receipt would not have supported the State's position that [defendant] did not scan nor pay for the detergent. . . .

Although the [c]ourt agrees with [the municipal court judge] that a receipt would have been very helpful in determining whether the defendant paid for the mop and detergent, the video evidence clearly corroborates the State's allegations beyond a reasonable doubt.

Thus, this [c]ourt will deny the defendant's request for an adverse inference. See . . . Richardson, 452 N.J. Super. at 136 holding that:

> "For a [c]ourt to exercise its discretion in drawing an adverse inference the [c]ourt must consider the nature of the discovery obligation, the explanation given by the State for the violation, and any other relevant factors."

Consistent with the laws of the State of New Jersey and the above-described circumstances the

[c]ourt hereby affirms the decision of the Freehold Municipal Court dated June 20[], 2018.

Following the judge's findings, defense counsel noted the cashier "never testified that he went and verified on the machine certain things. We can clearly see on the [video] that he was looking at his monitor, but the thing about breaking it down into four sections, none of that was testified to." Defense counsel also noted nothing could be read on the cashier's screen due to the lack of the video clarity. The judge disagreed and noted he based his findings on his independent review of the video.

The judge entered the judgment and the same sentence as the municipal court. He stayed his decision pending appeal.

Defendant raises the following points on appeal:

POINT I

THE EVIDENCE FAILS TO ESTABLISH BEYOND A REASONABLE DOUBT THAT DEFENDANT WAS GUILTY OF THE OFFENSE OF SHOPLIFTING.

POINT II

THE STATE'S FAILURE TO PROVIDE A COPY OF THE CASH REGISTER RECEIPT ENTITLED APPELLANT TO AN ADVERSE INFERENCE.

Following a de novo appeal to the Law Division, conducted on the record developed in the municipal court, our standard of review is limited. State v.

Clarksburg Inn, 375 N.J. Super. 624, 639 (App. Div. 2005); see also R. 3:23-8(a)(2). We "consider only the action of the Law Division and not that of the municipal court." State v. Oliveri, 336 N.J. Super. 244, 251 (App. Div. 2001). The Law Division judge must make independent findings of fact and conclusions of law based on the evidentiary record of the municipal court with deference to the municipal court judge's ability to assess the witnesses' credibility. State v. Johnson, 42 N.J. 146, 157 (1964).

In turn, we focus our review on "whether there is 'sufficient credible evidence . . . in the record' to support the trial court's findings." State v. Robertson, 228 N.J. 138, 148 (2017) (alteration in original) (quoting Johnson, 42 N.J. at 162). We are required to defer to the trial court's factual findings. State v. Locurto, 157 N.J. 463, 470-71 (1999). Indeed, we must uphold the court's factual findings as long as they are supported by sufficient competent evidence in the record. State v. Reece, 222 N.J. 154, 166 (2015). Apropos of the issues raised on this appeal, our Supreme Court stated:

> A policy of deferring to findings of fact of a trial court based on its review of video and documentary evidence has certain tangible benefits. When more than one reasonable inference can be drawn from the review of a video recording, . . . then the one accepted by a trial court cannot be unreasonable and the alternative inference accepted by an appellate court cannot be superior. In such a scenario, a trial court's factual conclusions reached by drawing permissible inferences cannot be clearly mistaken, and the mere substitution of

an appellate court's judgment for that of the trial court's advances no greater good. . . .

. . . .

Acknowledging that a trial court's factual findings are entitled to deference does not mean that appellate courts must give blind deference to those findings. Appellate courts have an important role to play in taking corrective action when factual findings are so clearly mistaken -- so wide of the mark -- that the interests of justice demand intervention. . . . Deference ends when a trial court's factual findings are not supported by sufficient credible evidence in the record.

[State v. S.S., 229 N.J. 360, 380-81 (2017) (citations omitted).]

Our review of the trial court's legal conclusions is plenary. See State v. Kuropchak, 221 N.J. 368, 383 (2015).

Pursuant to N.J.S.A. 2C:20-11(b)(2), the State was obligated to prove beyond a reasonable doubt that defendant

purposely . . . conceal[ed] upon [her] person or otherwise any merchandise offered for sale by any store or other retail mercantile establishment with the intention of depriving the merchant of the processes, use or benefit of such merchandise or converting the same to the use of such person without paying to the merchant the value thereof.

Having thoroughly reviewed the record, we are satisfied the State met the burden of proof and decline to substitute our judgment for the reasonable inferences drawn from the trial judge's detailed review of the video, namely, that

defendant failed to scan the detergent. Moreover, the video does not unequivocally refute his finding defendant knew the bar code scanner did not detect the detergent. Defendant's "belligeren[ce]" when confronted by the cashier in a public fashion further supported the judge's finding her intent was to exit the store without paying for the detergent.

We also do not second guess the judge's finding that the cashier's monitor showed when defendant had scanned an item. This finding is further supported by the portion of the cashier's testimony the judge did not reject in which the cashier stated he had checked the monitor and did not see that the detergent had been scanned.

Finally, the judge cited our decision in Richardson. There, the defendant was convicted of drug charges based solely on an officer's testimony he discovered drugs on him in the police station booking room and the State destroyed the video tape evidence from the booking room allegedly depicting the event. 452 N.J. Super. at 128. The trial judge denied defense counsel's request for an adverse inference jury charge as a result of the destroyed evidence. Ibid.

We concluded defendant was entitled to the video tape as part of the discovery process and reversed. Id. at 132, 142. We stated:

> The disclosure obligation pertains to "relevant material," R. 3:13-3(b)(1)[1], and includes videorecordings in the State's possession, R. 3:13-3(b)(1)(B). To qualify as "relevant material," the evidence must have "'a tendency in reason to prove or disprove [a] fact of consequence to the determination of the action.'" State v. Gilchrist, 381 N.J. Super. 138, 146 (App. Div. 2005) (quoting N.J.R.E. 401). A court must "focus upon 'the logical connection between the . . . evidence and a fact in issue.'" Ibid. (quoting State v. Darby, 174 N.J. 509, 519 (2002)). The videotape certainly met that standard. It recorded the alleged offense and would have tended to prove or disprove the officer's testimony that defendant possessed heroin in his sock.
>
> [Richardson, 452 N.J. Super. at 132 (second and third alterations in original).]

See also State v. Carter, 91 N.J. 86, 112 (1982) (holding "when no request is made by the defendant or only a general request is made, information not revealed by the prosecutor will be considered material only if 'the omitted evidence creates a reasonable doubt that did not otherwise exist . . . .'").

Because the State met its burden of proof on the evidence presented, the receipt was not a part of its case. The judge did not abuse his discretion in declining to draw an adverse inference for the State's failure to produce the receipt.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[1] Rule 7:7-7(c) is the applicable corollary Rule here and utilizes the same relevancy standard as Rule 3:13-3(b)(1).